IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41383

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2013-22) DOE. | ) ) ) ) | 2014 Unpublished Opinion No. 462 |
| | ) | Filed: April 18, 2014 |
| | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Petitioner-Respondent, | ) ) | |
| v. | ) ) | |
| JANE (2013-22) DOE, | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Rick L. Bollar, Magistrate.

Judgment terminating parental rights, affirmed.

Dennis R. Byington, Minidoka County Public Defender, Burley, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent. James T. Baird argued.

_____

WALTERS, Judge Pro Tem

Jane (2013-22) Doe (Mother) appeals from the judgment terminating her parental rights to her three children. For the reasons that follow, we affirm.

## I.

## FACTS AND PROCEDURE

At the heart of this case are three children: Child 1, born in 2007; Child 2, born in 2009; and Child 3, born in 2010 (collectively, the children). They are the children of Mother and John Doe (Father).

1

**A.     The Child Protective Act Proceedings**

In 2009, Mother, Child 1, and Child 2 were involved in a Child Protective Act (CPA) proceeding, Idaho Code §§ 16-1601-1643.  Father was not yet known to be the father of Child 1 and Child 2 and was not involved in the 2009 CPA proceeding.  Child 1 and Child 2 were removed from Mother's home and placed in a foster home in November 2009.  They were returned to Mother in August 2010, and the case was closed in November 2010.  Shortly thereafter, Father was released from incarceration and Mother and Father shared a home together.

From November 2010 through September 2011, the children were living in a home shared by Mother and Father.  In September 2011, the Minidoka County prosecutor filed a petition under the CPA asking the court to find the children within the jurisdiction of the CPA. The petition alleged, "The children are at risk of being abused, neglected, and or lacking a stable home environment."  According to the petition, the Department of Health and Welfare (the Department) was referred to Mother and Father's home in late August 2011.  As a result of the visit and subsequent drug testing, it was determined that Child 3 tested positive for methamphetamine.  The children were then placed in shelter care in the same foster home that cared for Child 1 and Child 2 in 2009. *See generally* I.C. § 16-1608.  A shelter care hearing was held, and as a result of the hearing, the children were placed in the protective custody of the Department.

In October 2011, an adjudicatory hearing was conducted and the magistrate decreed that the children be placed in the protective custody of the Department for an indeterminate period of time.  As required under the October 2011 decree, the Department filed a case plan.  The magistrate approved the case plan and scheduled a review hearing for January 2012.  A status hearing was held in December 2011.  In January 2012, the children were returned to the home shared by Mother and Father, but a decree from a subsequent review hearing ordered that the children remain under protective supervision of the Department.

On June 26, 2012, a probation search was conducted of Mother and Father's home.  Both Mother and Father were arrested for drug-related charges and the children were again placed in the foster home.  The prosecutor moved the magistrate to change the children's status from protective supervision to protective custody.  The magistrate conducted a shelter care hearing and ordered the children to be in the protective custody of the Department.

On July 23, 2012, the magistrate conducted a CPA adjudicatory hearing. As a result of that hearing, the magistrate issued a decree finding aggravated circumstances, I.C. § 16-1619(6)(d); ordered the children to be in the protective custody of the Department for an indeterminate period of time; and ordered the Department to file a permanency plan, I.C. § 16-1620. The Department filed a permanency plan with the goal of terminating the parental rights and finding an adoptive home for the children. The magistrate approved the permanency plan and scheduled a review hearing for October 15, 2012. After the October 15, 2012, review hearing, the magistrate ordered that the children remain in the protective custody of the Department.

## B.     The Parental-Termination Proceeding

On December 18, 2012, the Department, represented by the State, petitioned the magistrate to terminate Mother and Father's parental rights. The petition alleged that Mother "neglect[ed] the children by being on probation and being arrested on probation violations on drug charges for possession of methamphetamines." The petition averred that termination was in the children's best interests because "the parents are unable to provide personal care or maintenance for these children and the best interests of the children would be served by providing them with a financially and emotionally stable home environment such as that which might be provided by adoptive parents."

On July 11, 2013, the magistrate conducted a parental rights termination hearing for both Mother and Father. The State presented testimony from a former child protection worker, the foster mother, Mother's probation officer, Father's probation officer, a social worker (the first social worker), the guardian *ad litem*, and a second social worker. Mother testified on her behalf and Father testified on his behalf. The testimony adduced at the July 11, 2013, hearing and relevant to Mother's case is as follows.

In November 2009, Child 1 and Child 2 were removed from Mother's home to a foster home. The first social worker recalled that he had Child 1, Child 2, and Mother drug tested and that the drug tests revealed that both Child 2 and Mother tested positive for methamphetamine. Mother and the then-presumed father stipulated to custody. He recalled that at the 2009 family unity and case plan meeting, he identified the following issues with Mother: substance abuse, legal, employment, and safe and stable housing. The former child protection worker testified that the family issues that were identified with Mother were financial stability, safe and stable

housing, drug court compliance, employment, visitation, concurrent planning, and for Mother to address her legal matters. Mother obtained employment, but was dropped from the drug court program and housing became a setback as Mother had to move back with her own family. Mother was "pretty compliant" while working with the former child protection worker and Mother did have visitation with the children.

Then, in August 2010, Child 1 and Child 2 were returned to Mother and subsequently stayed with both Mother and Father. Child 3 was born in late 2010. Although the children had been removed from the foster mother's home and were back with Mother and Father, the foster mother continued to care for the children two-to-three times per week. In August and September of 2011, Mother and Father expressed to the foster mother that "demons were after them and their children and that their house was possessed." According to the foster mother, "they were very scared people."

In August 2011, the Department, according to the first social worker, received a call with concerns about substance abuse, hallucinations, and domestic violence regarding Mother and Father. Although the first social worker confronted Mother with the allegations, Mother denied them, and the first social worker had the children and parents drug tested. Mother and Father along with Child 3 tested positive for methamphetamine. Mother stipulated to the Department assuming custody of the children.

At the family unity and case plan meeting following the August 2011 referral, the following issues were identified, according to the first social worker: substance abuse, safe and stable housing, visitation, and legal. The second social worker recalled that the case plan called for Mother to complete a substance abuse evaluation, a mental health evaluation and anger management training, and Mother needed to provide a safe, sanitary home free of illegal drugs. In addition, Mother needed to be employed and follow her probation requirements.

Meanwhile, the three children returned to the foster mother as a result of the drug tests and "[i]t was like coming home" for the children according to the foster mother. During the second period that the foster mother had the children, Mother visited but would come unprepared and was sick a few times.

For her case plan, Mother completed the necessary evaluations and training and did maintain a safe, sanitary, and stable home. Given this progress, the children were returned to Mother and Father's home in January 2012 for an extended home visit and were placed under the

4

Department's protective supervision in spring 2012. The foster mother continued contact with the parents, visited the children--sometimes staying a whole week--and babysat the children. The foster mother helped Mother and Father monetarily during the time the children were back with Mother and Father, including purchasing a car for Mother and Father because Father's truck was not fit to transport the children. In mid-2012, the foster mother was also aware that Mother was going through a hard time because Mother's mother passed away and Mother "[i]ncredibly struggled" before Mother relapsed.

Then, on June 26, 2012, the first social worker received another referral after a probation check at Mother and Father's home. Additional drug tests were conducted, and Child 2 and Child 3 were positive for methamphetamine. The children were again returned to the foster mother, and she has cared for them since June 26, 2012. Mother's probation was violated because of a June 26, 2012, possession charge, according to Mother's probation officer. While Mother was incarcerated following the incident, Mother had phone contact with and wrote letters to the foster mother. In addition, Mother sent pictures, small trinkets, and books to the children.

Mother testified on her behalf. Mother, age twenty-five when the hearing occurred, testified she began experimenting with illegal drugs when she was sixteen and began using methamphetamine when she was seventeen. Her first outpatient treatment occurred when she was nineteen or twenty, and she had other outpatient treatment since. She acknowledged that Father was not a part of the 2009 case plan. Mother, when her first case plan was winding down, moved in with Father's parents. Around the same time Mother's case plan closed, Father was released from incarceration, and Mother moved in with Father. She stated that Father maintained employment and she and Father maintained a home. When the Department re-entered the lives of Mother and Father in August and September 2011, Mother believed a caller had contacted the Department alleging that she was exposing the children to drugs. Mother, though, did believe the house she and Father were living in was haunted. Mother acknowledged that she submitted to a drug test, as did the children, and that Child 3 returned a positive result in the 2011 incident.

After the children returned to Mother's home in January 2012 and Mother started the October 2011 case plan, Mother thought she was doing well on the case plan. However, when her mother died from a drug overdose in June 2012, she did not take her mother's death well and relapsed. As a result of the June 26, 2012, incident, Mother was charged with a crime to which she pled guilty. Mother was placed on a rider with retained jurisdiction for a year.

5

Subsequently, the district court relinquished jurisdiction and she was sentenced to serve a seven-year term, with two years determinate. Mother was given credit for time served and she expected to be released within nine months of the parental rights termination hearing. Mother agreed, though, that she might have to complete additional outpatient treatment once she was released from prison. Mother believed that she would have the tools and skills to avoid relapsing in the future. In addition, Mother agreed that it was unfair to the children that she was unavailable to them and agreed that the children need stability and are in a stable home with the foster mother. Mother asserted she was a fine parent, and although she could not provide for the children as of the hearing date, she believed she could once she was released from prison. She did not believe it was in the children's best interests to terminate her parental rights asserting, "Because I love them and I'm their mother and they need me just as much as I need them."

In addition to Mother's testimony, the foster mother, the guardian *ad litem*, and the second social worker opined what would be in the children's best interests. During the time the children were with the foster mother, she noted improvement in all the children, including noticeable progress with Child 2, although Child 2 still required additional development. She also provided records of the children's dental work, medical visits, and immunization updates. The foster mother thought the children need a home that is secure, stating, "They need to be in a loving relationship where they know what's going to happen to them each day of the week."

The guardian *ad litem* opined that termination was in the children's best interests: "The kids need a stable situation . . . . They need stability, they need love, they need guidance, they need safety, and they need to know that when they wake up in the morning they're going [to] be in the same place." When asked if she would change her mind knowing Father would be available to care for the children and that Mother may be out of jail in nine months, the guardian responded, "No. The reason why is there is a drug problem."

The second social worker testified that she was aware that Mother was still incarcerated as of the day of the hearing. In addition, she was of the opinion that it was in the best interests of the children to terminate the parental rights: "These parents love their kids, but they've never been able to show them they can maintain. They can maintain for a little while, but they've shown they can't maintain their sobriety for the long run." The second social worker further opined that the children were doing better as a result of the foster care.

The magistrate issued a decree with findings of fact and conclusions of law. The magistrate determined that the Department had taken reasonable efforts to reunify Mother with the children. Moreover, the magistrate found that the State had proven neglect by clear and convincing evidence and that termination was in the best interests of the children. Accordingly, the magistrate ordered Mother's parental rights terminated. Mother appeals.

## II.

## STANDARD OF REVIEW

For a parental rights termination action, the standard of review was announced by the Idaho Supreme Court:

> This Court's standard of review in parent-child termination cases is well settled. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. This Court must conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.

*Doe v. Doe*, 155 Idaho 505, 507, 314 P.3d 187, 189 (2013) (citations and internal quotation marks omitted).

## III.

## ANALYSIS

Mother raises four issues on appeal: (1) whether the magistrate erred by finding aggravated circumstances in the CPA decree; (2) whether the magistrate erred by allowing evidence beyond the scope of the pleadings; (3) whether the magistrate erred by taking judicial notice of prior proceedings including case plans and orders; and (4) whether the magistrate erred by terminating mother's parental rights. We address these in turn.

### A.    Aggravated Circumstances Finding

Mother challenges the magistrate's finding of aggravating circumstances contained in the CPA decree. Mother contends the magistrate's findings of chronic drug use and abandonment were erroneous. The State argues that Mother has waived the issue due to the untimeliness of the appeal. In the alternative, the State maintains that the finding was supported by evidence.

7

Mother asserts that the right to appeal the CPA order is discretionary and contends that she had the right to appeal the final judgment.

Initially, we note that the Idaho Supreme Court has disagreed with the State's waiver argument in *Idaho Dep't of Health & Welfare v. Doe*, ___ Idaho ___, 320 P.3d 1262 (2014). The finding of aggravated circumstances in the CPA decree is appealable under Idaho Appellate Rule 17(e)(1)(A) because the CPA decree is an interlocutory order. *Doe*, ___ Idaho at ___, 320 P.3d at ___.

Although the aggravated circumstances finding may be reviewed on appeal, we do not reach the merits of Mother's arguments. Mother's briefing on appeal does not explicitly address what impact an erroneous aggravated circumstances finding would have on the final judgment terminating her parental rights. A finding of aggravated circumstances permits the court in the CPA proceeding to vest custody of the children in the Department even though the Department did not take reasonable efforts prior to the CPA proceeding to prevent placement of the children in foster care. I.C. § 16-1619(6)(d). In this case, an erroneous aggravated circumstances finding would have no impact on the CPA decree's vesting of custody with the Department. This is because the magistrate found that reasonable efforts were taken to prevent the placement of the children in foster care. These findings are *not* contested on appeal. Accordingly, the magistrate complied with the statutory requirements in Idaho Code § 16-1619(6), even though the magistrate also found aggravating circumstances.

To be sure, had aggravated circumstances not been found in this case, the Department would have been required to file a CPA case plan, I.C. § 16-1621(1) (2012), but that case plan still could have included efforts to place the children for adoption, I.C. § 16-1621(3), (4) (2012), and the Department still would have had the authority to file a termination petition. Once the court vests custody in the Department under Idaho Code § 16-1619, as the magistrate properly did in this case, "the department *may* petition the court for termination of the parent and child relationship." I.C. § 16-1624(1) (emphasis added). An erroneous aggravated circumstances finding would have no impact on the filing of a termination action in this case because the Department had the authority to file a petition for termination;[1] the termination action is a

---

[1]    The salient point to address regarding aggravated circumstances relates to procedure and the authority granted to the Idaho Department of Health and Welfare. Relevant to the Child Protective Act proceeding, the Department is not required to file a case plan when a court has

separate proceeding that we examine apart from the CPA proceeding. Effectively, any error relating to the aggravated circumstances finding in this case is moot, based upon our analysis of the termination of Mother's rights. *See Doe II v. Doe III*, 145 Idaho 337, 340, 179 P.3d 300, 303 (2008) (applying the mootness doctrine and concluding that a challenge to a district court's denial of the grandparents' action seeking custody of the grandchild was moot because the grandparents were subsequently awarded guardianship over the grandchild).

**B.     Evidence Beyond the Scope of the Pleadings**

Mother contends the magistrate erred by allowing evidence beyond the scope of the pleadings. Mother generally contends that she "objected to the State's offer of proof of different kinds [of] acts not specified in the Petition of Termination." However, a party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). In this case, Mother has not cited authority for her argument nor has she specifically identified which acts were outside of the petition of termination. The issue is thus waived.

**C.     Judicial Notice**

Mother argues that the magistrate erred by taking judicial notice of prior proceedings including case plans and orders. The extent of Mother's argument is a reference to one finding of fact made by the magistrate and a general statement from Mother: "We can only question whether there are recollections of some sort from prior proceedings, which are not allowed in the determination by the Court." The State, on the other hand, maintains there was "extensive testimony" in the record for the magistrate to make his findings.

At the beginning of the parental rights termination hearing, the State moved the court to take judicial notice of the "two adjudicatory hearing orders and the case plans that arose out of those." Mother's attorney objected and Father's attorney joined in the objection. The magistrate acknowledged that the State still had to meet its burden of proof, but announced that he would

---

found aggravated circumstances. I.C. § 16-1621. Rather, Idaho Code § 16-1619(6)(d) requires that a permanency hearing be held within thirty days of a finding of aggravated circumstances. If, as a result of the hearing, the court approves a permanency plan with a permanency goal of terminating parental rights and adoption, then the Department is required to file a termination petition within thirty days of the order approving the permanency plan with a permanency goal of terminating parental rights and adoption. I.C. § 16-1624(2); *but see* I.C. 16-1624(3).

take judicial notice of the requested documents. Following a mid-day recess in the parental rights termination hearing, the magistrate announced that he was correcting a portion of his denial of Mother's attorney's objection to the motion for judicial notice and stated, "No part of the court's record in the proceeding under the Child Protective Act can be used for purposes of meeting the petitioner's burden of proof in the trial on the petition to terminate."

In a parental rights termination proceeding, the Idaho Rules of Evidence apply. Idaho Juvenile Rule 48(b). Idaho Juvenile Rule 48(b) states:

> [N]o part of the court's record in the proceeding under the Child Protective Act may be used for purposes of meeting the petitioner's burden of proof in the trial on the petition to terminate parental rights, unless the part offered is admissible under the Idaho Rules of Evidence, or unless the parties stipulate to its admission.

Idaho Rule of Evidence 201 authorizes judicial notice of adjudicative facts. Adjudicative facts are those that are generally known within the territorial jurisdiction of the trial court or those capable of accurate and ready determination. I.R.E. 201(b); *State v. Doe*, 146 Idaho 386, 387, 195 P.3d 745, 746 (Ct. App. 2008). Generally, when a party moves for the court to take judicial notice, it must specify which documents or items the party is requesting the court to take notice of and must provide a copy of those documents to the court and parties. I.R.E. 201(d). Rule 201 requires certain formalities for a court to take judicial notice of facts that were presented outside of the present hearing, but does not prohibit a judge from taking notice that prior cases have been conducted. If we find an evidentiary error that may impact a factual finding, we review the error to determine if the error was harmless. *See Doe I v. Doe*, 138 Idaho 893, 906-07, 71 P.3d 1040, 1053-54 (2003) (concluding that certain factual errors were harmless, even if the factual error was clear error).

We begin with Mother's general statement in her brief questioning "whether there are recollections of some sort from prior proceedings, which are not allowed in the determination by the Court." It is apparent from the factual findings in the magistrate's memorandum decision that the magistrate utilized the testimony adduced at the parental rights termination hearing--over two hundred pages of trial transcript--as the basis for his determination. Accordingly, we cannot say that the court erroneously took judicial notice of "recollections of some sort from prior proceedings" because the factual findings made by the magistrate were based on the testimony at the termination hearing.

As for the specific factual finding referenced by Mother, the magistrate found by clear and convincing evidence that "[t]he parents were experiencing hallucinations and displaying aberrant behavior." During the termination hearing, the first social worker testified as to the 2011 referral: "The Department received a call of some concerns in regard to the three . . . children. The concern was that [Mother and Father] were allegedly using methamphetamine and bath salts, spice, just some different drugs, that they were hallucinating . . . ." Both Mother and Father also testified that they believed their house was haunted by ghosts. Even assuming the magistrate erred by improperly taking judicial notice of "recollections of some sort from prior proceedings" (or by not clarifying that the parents were *alleged* to be experiencing hallucinations during the 2011 referral), we are persuaded that any error relating to the hallucinations finding was harmless.

## D.    Termination of Parental Rights

Mother challenges the magistrate's finding of neglect and finding that termination was in the children's best interest. Mother argues that the findings are not supported by substantial and competent evidence and she highlights certain facts. Mother contends the magistrate should have addressed how Mother's relapse was different. Also, Mother asserts that the totality of the circumstances does not lead to the conclusion that there was clear and convincing evidence that termination was in the best interests of the children. In contrast, the State argues it has proven by clear and convincing evidence that Mother neglected her children and that termination was in the best interests of the children.

A court may terminate a person's parental rights if it finds: (1) a statutory ground exists for termination; and (2) termination is in the best interests of the child. I.C. § 16-2005; *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012). One statutory ground for termination is finding the child is neglected. I.C. § 16-2005(1)(b). A neglected child is defined, in relevant part, as a child:

(a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; . . . or

(b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being[.]

11

I.C. § 16-1602(26); *see* I.C. § 16-2002(3)(a).  Neglect may also occur where:

> The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
>> (i)   The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
>> (ii)   Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

I.C. § 16-2002(3)(b).  A court may also consider the events resulting in the child being placed in foster care when determining whether there was neglect.  *Dep't of Health & Welfare v. Doe*, 145 Idaho 662, 665, 182 P.3d 1196, 1199 (2008).

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991).  Expert testimony is not required to establish that termination would be in the child's best interests. *Doe I v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999).  When determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.  *Doe*, ___ Idaho at ___, 320 P.3d at ___; *see Doe I*, 133 Idaho at 809-10, 992 P.2d at 1209-10; *Doe v. Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992).  A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence.  *Doe*, 152 Idaho at 957, 277 P.3d at 404.

In this case, the magistrate noted Mother's 2009 involvement and acknowledged that Mother complied with the original case plan.  The magistrate, though, found that the children's return to Mother's home was "short-lived" because of the August 2011 incident, arising from a report to the Department and resulting in Child 3 testing positive for methamphetamine.  The magistrate found that from the June 2012 incident "and continuing through the time of trial, [Mother] has been incarcerated and unable to care for her children, provide for their support, or comply with any case plan."  The magistrate determined that it would be in the best interests of the children to terminate Mother's parental rights because of Mother's "continued use of

12

controlled substances and exposure of her children to those substances, as well as her ongoing and continued incarceration and inability to discharge her responsibilities to and for her children." The magistrate also determined that Mother "failed to consistently maintain a safe, stable, drug free home" while the children were in Mother's custody. Mother's periods of incarceration, according to the magistrate, resulted in the inability of Mother to discharge her parental responsibilities. "As a result of that inability, the children lack the parental care necessary for their health, safety or well-being . . . ." From these findings, the magistrate determined the children were being neglected.

We are persuaded that the magistrate's finding of neglect is supported by substantial and competent evidence. The testimony at the termination hearing revealed three instances during which Mother's children were placed in foster care. The latter two instances are of greater significance to the termination. In each of the latter instances, at least one of the children tested positive for methamphetamine and the children were sent to foster care. Simply put, Mother did not maintain a drug-free environment for the children. Mother herself testified that she had been using drugs for the nine years prior to the hearing, including methamphetamine for the eight years prior. Additionally, during the time periods relevant to this case, the children tested positive three times for drugs.

Moreover, Mother's conduct during the two time periods resulted in an unsafe and unstable home for the children and Mother has established a pattern of making progress before falling behind and putting her children in danger. These factors, when considered together, are the substantial and competent evidence that form the finding of neglect. *See Doe*, 145 Idaho at 665, 182 P.3d at 1199 (affirming the district court's decision affirming the magistrate's finding that the children were neglected based on several factors). Even though the magistrate based his finding of neglect on Idaho Code § 16-2002(3)(a), the magistrate was also allowed to consider Mother's failure to complete her October 2011 case plan. *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 356, 365, 256 P.3d 764, 773 (2011) ("Therefore, it is not error for a magistrate court to make a finding of neglect pursuant to I.C. § 16-2002(3)(a), based on noncompliance with a case plan, where such evidence supports a finding of conduct constituting neglect as defined in either I.C. §§ 16-1602(25)(a) or 16-1602(25)(b)."). In this case, the June 26, 2012, incident not only meant Mother failed her case plan, but Mother was sentenced on a criminal charge, violated probation, and was incarcerated, making her unavailable to care for the children.

13

It goes without saying that Mother, as of the date of the hearing and for an indefinite time period, could not provide adequate housing for the children because she was incarcerated. Considering all of these facts, the magistrate's finding that the children were neglected is supported by substantial and competent evidence.

We are also persuaded that the magistrate's finding that termination of Mother's parental rights would be in the best interests of the children is supported by substantial and competent evidence. The evidence shows that Mother failed to demonstrate an ability to safely parent the children, failed to follow through with the case plan, and used illegal drugs. Moreover, mother did not provide a safe environment for the children. Conversely, the children have developed a loving and stable bond within the foster home. The foster mother testified that she provided dental, medical, and updated immunizations to the children. The children have improved while in the foster home. Moreover, the foster mother, the second social worker, and the guardian *ad litem* all opined that termination was in the best interests of the children so that the children may have stability. Undoubtedly, Mother loves her children, as several witnesses testified to at the termination hearing, but the magistrate's determination that it would be in the best interests of the children to terminate Mother's parental rights is supported by substantial and competent evidence.

Mother's arguments do not undermine the conclusion of the magistrate. Mother asserts certain findings of fact are not supported by substantial and competent evidence. Mother's challenges generally dispute how the magistrate worded certain findings. Having reviewed the record, we are persuaded that these findings are supported by substantial and competent evidence, even though they may not be communicated in the way Mother wishes the findings to be stated. Mother's argument regarding the Department's 2011 receipt of a report regarding drug abuse and hallucinations was dealt with above. Mother also contends the magistrate should have elaborated on how Mother's relapse was "different." The magistrate's memorandum decision details the proceedings and testimony and properly addresses the applicable law. Again, even though Mother would have preferred the magistrate to use a different viewpoint to arrive at its decision, the magistrate's findings encapsulate the testimony and are backed by substantial and competent evidence.

## IV.

## CONCLUSION

Although we conclude that Mother has not waived her appeal of the aggravated circumstances finding, we do not reach the merits of Mother's arguments. Even if the aggravated circumstances finding was erroneous, the Department still had the authority to petition for termination of Mother's parental rights. Any error relating to the aggravated circumstances finding is effectively moot, based on our analysis of the termination action.

Additionally, even though Mother contends the magistrate erred by allowing evidence beyond the scope of the pleadings (the petition), we conclude that Mother has waived the issue. We are persuaded that the magistrate did not take improper judicial notice of the CPA proceedings; rather, it is apparent from the factual findings in the magistrate's memorandum decision that the magistrate utilized the testimony adduced at the parental rights termination hearing. As to the specific factual finding cited by Mother, we are persuaded that any error was harmless.

Finally, we conclude that the magistrate's finding of neglect and finding that termination was in the best interests of the children are supported by substantial and competent evidence. Accordingly, we affirm the magistrate's judgment terminating Mother's parental rights to the children.

Judge LANSING and Judge MELANSON **CONCUR.**