992 P.2d 1205

**In the Matter of Jane Doe,
a Minor Child.**

**John DOE and Jane Doe I, Petitioners–
Respondents,**

v.

**Jane ROE, Respondent–Appellant.**

No. 24978.

Supreme Court of Idaho.
Pocatello, September 1999 Term.

Dec. 16, 1999.

Randall D. Schulthies, Bannock County Public Defender, Pocatello, for appellant. Kent V. Reynolds argued.

Douglas K. Merkley, Pocatello, for respondents.

SCHROEDER, Justice.

This is an appeal from the decision of the district court which affirmed the decision of the magistrate court to terminate the parental rights of Jane Roe (Roe) to her child, Jane Doe (the minor child). Roe challenges the finding that there is substantial, competent evidence to support the decision to terminate her parental rights.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Roe and John Doe were married in 1985. The minor child was born on September 23, 1988. The parties were divorced in 1993. Roe and John Doe were awarded joint legal custody of the minor child. Roe had primary physical custody and John Doe had liberal rights of visitation. John Doe married Jane Doe I (the stepmother) in June 1994.

The minor child resided with Roe from August 1993 through September 1995. In this period Roe had seven different residences. During this time Roe cohabitated for six to eight months with a man who testified that he witnessed Roe consume alcohol frequently and that she used illegal drugs in the presence of the minor child. He became concerned about Roe's behavior and contacted John Doe to inform him of the concerns.

Roe cohabitated with another man for approximately one year during the time she had primary custody of the minor child. He testified that Roe consumed alcohol daily and used illegal drugs on a weekly basis. According to him, Roe was intoxicated frequently in the presence of the minor child. On several occasions he found Roe passed out at 2:00 or 3:00 a.m. with the minor child by her side crying and pulling Roe's hair trying to wake her up. The minor child was seven years old at the time. He testified that he regularly had to feed and dress the minor child and take her to school because Roe was either asleep or did not want to take on the responsibilities herself. He was concerned about Roe's behavior towards the minor child, and he contacted John Doe to inform him of his concerns.

In July 1995, John Doe petitioned to modify the divorce decree based on concerns regarding Roe's continuing substance abuse problem and its effect on the minor child. The parties stipulated to modify the decree to provide that John Doe would have physical custody of the minor child and Roe would have liberal rights of visitation. The magistrate entered an order modifying the divorce decree pursuant to the parties' stipulation. The order included the following alcohol/drug provision:

> q. Neither party shall consume alcohol or use any illegal drugs while he or she is in the presence of, or has custody/visitation of, the minor child, nor shall either party attempt to pick or drop off the child when they have been using alcohol or illegal drugs.

> If the Defendant [John Doe] suspects the Plaintiff [Roe] has been using alcohol or illegal drugs around their minor child, the Defendant may request an alcohol and/or drug test be taken by the Plaintiff at the Defendant's expense. If the Plaintiff refuses to submit to immediate testing or fails the test, her visitation/custody is suspended until further order of the Court.

The order imposed other restrictions on the parties, including the prohibition of nonmarital cohabitation with a person of the opposite sex in the presence of the minor child. Roe

was also ordered to pay child support, but only if she had an income that was equal to or exceeded $800 per month.

John Doe testified that Roe repeatedly violated the modification order by consuming alcohol and illegal drugs while in the presence of the minor child. Roe also violated the cohabitation provision in the order. Consequently, John Doe filed a second petition seeking an immediate modification of Roe's visitation rights and requesting that Roe only be allowed supervised visitation. The parties agreed to the second modification, and a stipulated order was entered on May 16, 1996, which limited Roe's contact with the minor child to supervised visitation. Roe was allowed to make only one phone call per day to the minor child, which must be made prior to 8:00 p.m., and both parties were to refrain from consuming alcohol or illegal drugs while in the presence of the minor child. The stipulated order allowed for the termination of Roe's visitation rights if she violated any term of her supervised visitation.

On November 7, 1996, John Doe filed an amended petition for modification, alleging that Roe had violated provisions of the stipulated order in the following respects:

(1) Roe had consumed beer during a family reunion while she was exercising her right to supervised visitation with the minor child;

(2) Roe was convicted of two misdemeanor counts, one involving harassing phone calls to John Doe's stepchildren at John Doe's home, and a second involving driving under the influence of alcohol. As a result of the DUI conviction, Roe was incarcerated;

(3) Roe visited the minor child at the child's school without supervision.

On March 5, 1997, the magistrate entered an order limiting Roe's contact with the minor child to sending letters and gifts. John Doe testified that since entry of the March 5, 1997, order, Roe has only written to the minor child twice.

On March 4, 1997, John Doe filed a petition for termination of the parent-child relationship. The case was tried and the magistrate granted the petition for termination on the grounds of abandonment, neglect and that termination would serve the best interests of the minor child. Roe appealed to the district court which reversed the decision with the respect to abandonment but affirmed the decision on the grounds of neglect and that termination would serve the best interests of the minor child. Roe appealed the district court decision.

## II.

### STANDARD OF REVIEW

■ The Court of Appeals has summarized the standard of review in proceedings to terminate a parent-child relationship.

It is well settled that, in a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence. When the trial court finds that the grounds as defined by statute, which are alleged for termination, are established by clear and convincing evidence, those findings will not be overturned on appeal unless they are clearly erroneous. Clear error, in turn, will not be deemed to exist where the findings are supported by substantial and competent, albeit conflicting, evidence. "It is for the trial court to determine whether clear and convincing evidence supported the termination of parental rights. [This Court's] task on ... appeal is to determine whether the trial court's finding ... is clearly erroneous." Furthermore, "in reviewing such findings, this Court will indulge all reasonable inferences in support of the trial court's judgment" when reviewing an order that parental rights be terminated.

*In the Interest of Baby Doe,* 130 Idaho 47, 53, 936 P.2d 690, 696 (Ct.App.1997) (quoting *In the Interest of Crum,* 111 Idaho 407, 409, 725 P.2d 112, 114 (1986)); *Matter of Aragon,* 120 Idaho 606, 608, 818 P.2d 310, 312 (1991) (other citations omitted). "Where ... the issues before the appellate court are the same as those considered by the district court sitting in an appellate capacity, the appellate court will review the trial record with due regard for, but independently from,

the district court's decision." *Doe v. State, Dep't of Health & Welfare,* 122 Idaho 644, 645, 837 P.2d 319, 320 (Ct.App.1992).

## III.

## THE DECISION OF THE TRIAL COURT CONCERNING NEGLECT OF THE MINOR CHILD BY ROE IS SUPPORTED BY SUBSTANTIAL, COMPETENT EVIDENCE.

█ The trial court concluded that the evidence established abandonment pursuant to § 16–2005(a) and neglect pursuant to § 16–2005(b) and that termination would be in the best interests of the minor child. The district court reversed the decision with respect to abandonment but affirmed the decision on the grounds of neglect and that termination would serve the best interests of the child. Roe maintains that the evidence presented at trial is insufficient to support a finding of neglect.

Section 16–2005(b) defines "neglect" as "a situation in which the child lacks parental care necessary for his health, morals and well-being." The trial court made the following comments with respect to its belief that the evidence established neglect by clear and convincing evidence:

> The evidence in this case is more than persuasive that there has been neglect of [the minor child] by the mother, and even abuse (considering the emotional impact on the child of the incidents testified to at trial). Considering the mother's battle with addictions, the history of the manner in which this has impacted the life of [the minor child] (as well as other family members), and current status of the other relative to possible rehabilitation and ability to parent [the minor child] in the future, this court is persuaded that clear and convincing grounds for termination have been established by the father.

> This court, of course, has no ability to predict the future for the mother and her addiction problems, but it certainly must and does take notice of all past history, as testified to at trial by almost all witnesses, in concluding that the prognosis is very poor indeed relative to the mother ever

being able to stabilize her own life in such a way that she could provide for the "... health, morals and well-being ..." of her daughter.

> It is important to note two things in this respect: First, we are dealing with the life [of] a young child, now only 8 years of age, and that child has already lived through six or more years of varying degrees of neglect, and at a very minimum, emotional abuse, due to the addictive behaviors of her mother. Second, the mother's efforts at recovery and stabilization in her life—both of which would be absolutely necessary were she to be considered a proper parent for [the minor child]—may take longer than the childhood [the minor child] has left. In a relatively short time [the minor child] will be "grown up", and, based upon the recent history of the mother choosing jail time over probation, and not actively pursuing treatment as an option (except for her unsubstantiated testimony that she is on a waiting list for some program), the child's progress should not have to be delayed because of the mother's inability to cope with her own problems.

Two cases with facts similar to the present action have been decided by the Court of Appeals. *Hofmeister v. Bauer,* 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986); *In Interest of Cheatwood,* 108 Idaho 218, 697 P.2d 1232 (Ct.App.1985). The parents whose rights were terminated had histories of alcohol abuse which interfered with their ability to care for the children to the point that the children were without proper parental care. In each case the parent failed to successfully resolve the alcohol problem.

In *Cheatwood* the parent argued that termination was inappropriate because there was no evidence that her neglect actually caused any substantial harm to the child. The Court of Appeals disregarded her argument, noting that "nothing in the statutory definition of 'neglect' suggests that a child must suffer demonstrable harm before the parent-child relationship can be terminated. . . . The termination statutes of this state exist not merely to alleviate harm but to prevent it." 108 Idaho at 220, 697 P.2d at 1234.

In the present case the trial court focused on Roe's long history of substance abuse and the fact that it was unlikely she would recover from her addictions and be able to provide a stable environment for her daughter before her daughter reached the age of majority. The trial court did not believe her efforts at rehabilitation were sincere and determined that the "prognosis is very poor indeed" with respect to her ability to stabilize her life in order to care for the minor child.

■ There is conflicting evidence in this case with respect to the issue of neglect, but this Court defers to the trial court's ability to accurately weigh the evidence and judge the demeanor of the witnesses. *See Doe,* 122 Idaho at 649, 837 P.2d at 324. As this Court has previously noted,

> [t]he finder of fact has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties. In a parental-termination case, this is immensely important. A cold record of the trial does not tell the whole story. An independent review by [this Court] could not take into account the trial court's superior view of the entire situation.

*Aragon,* 120 Idaho at 608, 818 P.2d at 312 (quoting *Thompson v. Thompson,* 110 Idaho 93, 96, 714 P.2d 62, 65 (Ct.App.1986)).

Construing all reasonable inferences in favor of the trial court, the trial court's finding of neglect is supported by substantial, competent evidence. During the time that Roe had the minor child in her physical custody, she changed residences seven different times and cohabitated with several male friends. She regularly consumed alcohol and illegal drugs and was found lying unconscious with the minor child upset and crying by her side in the early morning hours. One of her ex-live-in boyfriends testified that he often had to take care of the minor child because Roe was either in bed or unwilling to take on the responsibilities herself. As a result of her own conduct, Roe's contact with the minor child was reduced to protect the interests of the minor child. There is substantial, competent evidence to support the trial court's finding of neglect.

## IV.

## THERE IS SUBSTANTIAL, COMPETENT EVIDENCE TO SUPPORT THE FINDING THAT TERMINATION IS IN THE CHILD'S BEST INTEREST.

■ Roe argues that there is not substantial, competent evidence to support the trial court's finding that termination would be in the best interests of the minor child. She points out that (1) no expert testimony was offered to support the assertion that termination was in the best interests of the minor child, (2) there is no evidence that the minor child desired termination, and (3) there is no evidence that reunification between her and the child would be detrimental to the child, or that the child would suffer trauma if the parent-child relationship were to continue.

■ There is no requirement that a party seeking termination present expert testimony to support the assertion that termination would be in the best interests of the child. Unlike I.C. § 32–717, which sets forth specific factors to be considered when determining the best interests of a child in divorce/custody cases, Chapter 20, concerning termination, contains no such provision. While it might be helpful to know whether the minor child desired termination, there is no requirement that such evidence be included when considering whether termination is in the best interests of the child.

There is substantial, competent evidence to support the trial court's finding that termination is in the best interests of the minor child. Roe has repeatedly violated the court orders modifying her visitation rights. As the trial court found, she has not shown the ability to change her conduct to assume parental responsibility. Although she is educated and has special skills, Roe continues to be unemployed and appears to be taking no present steps toward obtaining employment. She has not contributed to the financial support of the minor child since physical custody was transferred to the father in 1995. When faced with the choice of serving six months in jail or two years of probation after being

convicted of a DUI in 1996, she chose the jail time, claiming that one of the reasons she chose jail was that she could save money—money which could be used for the minor child's support. However, she has provided no financial support for the minor child since 1995.

The minor child has a good relationship in the home of her father and stepmother. There is evidence that since the minor child has come to live with his family she has become more outgoing, is a straight A student and is involved in extra-curricular activities. There is also evidence of an incident when Roe came to John Doe's home screaming and attempting to pull the minor child outside. The child refused to go with Roe because she was afraid of Roe.

As the trial court noted, Roe's plans for the future are uncertain. She admitted that she was taking no definite steps to obtain steady employment or provide a stable environment for the minor child to visit. The trial court believed that testimony by Roe evidenced her lack of understanding of her responsibilities as a mother, "and that it is not in the best interests of [the minor] child to have to wait while possibly other types of legal proceedings develop regarding visitation, custody, support, etc. The child deserves stability and certainty in her life, none of which her mother can provide."

The decision of the trial court that it is in the best interests of the minor child to terminate the parent-child relationship with her mother is supported by substantial, competent evidence.

## V.

## IT IS NOT NECESSARY TO CONSIDER ROE'S BEST INTERESTS UNDER THE DECISION OF THE TRIAL COURT.

■ Roe argues that the trial court erred by not considering whether termination would be in her best interests. Under § 16–2005(e), termination is appropriate if "termination is found to be in the best interest of the parent and the child." Roe claims that because one of the grounds upon which John Doe sought termination was I.C. § 16–2005(e), the trial court was required to con-

sider her best interests as a parent, as well as the child's best interests.

Although Doe did seek termination under § 16–2005(e), he also sought termination under § 16–2005(a), (b) and (d). The trial court granted the petition for termination on the grounds of neglect, pursuant to § 16–2005(b). Once the trial court determined that the termination was appropriate under § 16–2005(b), there was no need for the trial court to consider the merits of Doe's claim under § 16–2005(e). *Aragon,* 120 Idaho at 611, 818 P.2d at 315. While the best interests of the child must be considered when terminating the parent-child relationship under provision of § 16–2005, the best interests of the parent need not be considered unless termination is considered under § 16–2005(e). *Id.* The merits of the claim under § 16–2005(e) are not relevant in light of the finding that termination was proper on the basis of neglect under § 16–2005(b).

## VI.

## ATTORNEY FEES ON APPEAL.

■ Doe has requested an award of attorney fees pursuant to I.C. § 12–121, arguing that the appeal has been frivolously pursued. An award of attorney fees on appeal is proper under I.C. § 12–121 only if this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably, and without foundation. *See Anson v. Les Bois Race Track, Inc.,* 130 Idaho 303, 305, 939 P.2d 1382, 1384 (1997). Generally, when an appeal simply disputes the trial court's factual findings, which are supported by substantial although conflicting evidence, the appeal is considered frivolous and an award of attorney fees is proper under I.C. § 12–121. *Zanotti v. Cook,* 129 Idaho 151, 155, 922 P.2d 1077, 1081 (Ct.App.1996). However, considering the seriousness of the liberty interest affected in parental termination cases, the appeal in this case to reexamine conflicting evidence is not frivolous.

## VII.

## CONCLUSION

The trial court's decision to terminate Roe's parental rights is affirmed. Costs are

allowed to Doe. Doe's request for attorney fees under I.C. § 12–121 is denied.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.