**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40389**

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2012-14) DOE. _____ | 2013 Unpublished Opinion No. 377 Filed: February 27, 2013 |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | Stephen W. Kenyon, Clerk THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Petitioner-Respondent, | |
| v. | |
| JANE (2012-14) DOE, | |
| Respondent-Appellant. | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Mick Hodges, Magistrate.

Decree terminating parental rights, affirmed.

Dennis Byington, Cassia County Public Defender; E. Alex Muir, Deputy County Public Defender, Burley, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

_____

GUTIERREZ, Chief Judge

Jane Doe (Mother) appeals from the magistrate's decree terminating her parental rights to her children, arguing the magistrate erred by prematurely finding termination was in the best interests of the children. We affirm.

## I.

## FACTS AND PROCEDURE

The Idaho Department of Health and Welfare (Department) filed a Child Protective Act (CPA) case involving Mother's two minor children in November 2010. The Department initially sought protective supervision, but later filed for protective custody of the children. After a

1

shelter care hearing, the magistrate vested legal custody of the children with the Department in January 2011. The parties prepared a family case plan, pertaining to both Mother and the children's father, and filed it with the magistrate in February. Based on the parties' stipulation at the six-month review hearing in May 2011, the magistrate ordered the children to remain in protective custody. The magistrate held review hearings in June, July, August, and November 2011 and January 2012, none of which resulted in reunification of the parents with the children. Finally, in February 2012, the Department moved to terminate the parental rights of both Mother and the children's father. The magistrate conducted the termination hearing in August and, in September, entered a decree terminating the parental rights of both parents. Mother timely appeals.

## II.

## STANDARD OF REVIEW

The United States Supreme Court has held that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 254-55 (1978). *See also In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009). Concordantly, the Idaho Legislature has, in the CPA, directed that "the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship." Idaho Code § 16-1601. Likewise, the Termination of Parent and Child Relationship Act states, "Implicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2).

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence." *Santosky*, 455 U.S. at 769. *See also* I.C. § 16-2009; *Doe*, 146 Idaho at 761-62, 203 P.3d at 691-92; *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245, 220 P.3d 1062, 1064 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order terminating parental rights. *Id.* at 245-46, 220 P.3d at 1064-65. The Idaho Supreme Court has

2

also stated, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.
## DISCUSSION

### A.    Grounds for Termination

A court may terminate a person's parental rights if it finds a statutory ground exists for termination and termination is in the best interests of the child. I.C. § 16-2005; *Doe v. Roe*, 133 Idaho 805, 810, 992 P.2d 1205, 1210 (1999). A court may terminate the parental relationship where it finds the parent has abused or neglected the child. I.C. § 16-2005(b). Neglect is defined as a situation in which the child lacks parental care necessary for his health, morals and wellbeing, I.C. § 16-1602(25), or where the "parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9)," I.C. § 16-2002(3)(b). *See also Dep't of Health & Welfare v. Doe*, 145 Idaho 662, 663-64, 182 P.3d 1196, 1197-98 (2008). The time standard set forth in section 16-1629(9) creates a presumption that the Department shall initiate proceedings to terminate parental rights if the child is placed out of the home for fifteen of the last twenty-two months; it does not, however, create a presumption that it is in the best interests of the child to terminate parental rights. *Dep't of Health & Welfare v. Doe*, 149 Idaho 474, 479, 235 P.3d 1195, 1200 (2010). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *In re Doe*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012).

On appeal, Mother does not dispute the magistrate's finding of a statutory ground for termination--namely, neglect. Accordingly, we only review whether there is substantial and competent evidence that termination was in the best interests of the children and whether the decision to terminate, based on those findings, was premature.

3

**B.  Best Interests of the Children**

Mother contends the magistrate erred in finding that termination was in the best interests of the children and that the decision to terminate her parental rights was premature because she took numerous steps to comply with the family plan.  She provides the following actions she took, which she argues shows the magistrate's decision was error:  completing a social history; completing vocational rehabilitation; having continuous visitation with her children; obtaining a mental health evaluation; complying with the requirement to submit to random urinalysis; completing a substance abuse evaluation; entering substance abuse treatment; enrolling in parenting classes; and making attempts to find adequate housing.

At the termination hearing, the Department called numerous witnesses to testify to support a finding that termination of Mother's parental rights was in the best interests of the children.  The first social worker the Department called to the stand testified he did not feel the parents should have additional time to work the case plan, all services the parents had requested had been provided, and the parents' home and plan of support were unsuitable for the children to return to.  Specifically, he had worked with both Mother and the father but they did not make financial or other household changes that were necessary.  For example, they did not provide monthly budgets or eliminate unsanitary and hazardous conditions in their home.  Moreover, neither parent completed drug treatment.  In his opinion, it was in the children's best interests to terminate the parental relationship because the children needed stability, which the parents did not provide.

The next witness, another social worker, testified to one child's diagnosis of post-traumatic stress disorder based on past events in her home, including suffering sexual abuse.  The social worker testified to the significant improvements in the child's mental health following placement in foster care versus the minimal improvement in the child's mental health while she was in the care of her parents.  Testimony further demonstrated that Mother suffers from hallucinations and other mental health issues.  Although Mother had initially made improvements with her mental health, her progress regressed and she eventually stopped attending therapy for these issues.  Rather, as an alternative, Mother self-medicated her own post-traumatic stress disorder caused by sexual and other abuse.

The individual employed to help coordinate substance abuse treatment for the parents then testified.  He noted that both parents qualified for substance abuse treatment.  Though

4

Mother initially participated in an outpatient program, the treatment center discharged her from the program for using an illegal substance. She later entered into a different outpatient treatment program, which again resulted in discharge. After Mother failed the two programs, she did not seek placement in another facility by the time of the termination hearing, a period of over a year.

Echoing the observations of the second social worker to testify, one of the children's foster parents also testified as to the positive changes in the children while in foster care. The children exhibited strange behaviors when they were first in her home, but as a result of counseling and work with the children, they improved those behaviors. The foster parent testified to the negative effect visitations with the children's parents had on the children including nightmares, vomiting, and headaches. She stated that at visitations, Mother and the father would discuss the need to have the children back in order to receive welfare benefits, and as a result, the children would worry about the parents and exhibit what could be characterized as guilt that the parents were struggling without the receipt of such benefits. Moreover, during visits when the father was not present, Mother would make comments to the children expressing concern about his health and speculating that it may take a severe decline. This caused anxiety and angst in the children that their father may pass away at any time. The children's emotional and physical recovery after visits would take up to two or three days. When the children had their last goodbye with the parents just before visitations were to cease, the foster parent observed visible happiness and release in the children. She opined that the children most needed permanency.

Next, the children's guardian ad litem testified. She had been assigned to the case since the initial CPA action was filed in 2010 and was aware of the case plan, the attendant requirements the parents were to meet, and the progress each parent made. She believed the case plan was reasonable, but noted the parents did not complete it and any progress they made was short term. She testified that the parents did not keep in contact with her and she did not know where they lived at the time of the trial. In her constant contact with the children, she noted the children were doing better in school and were more under control while in foster care. In her opinion, termination of parental rights was in the children's best interests.

The visitation supervisor also testified, offering additional evidence regarding the negative effects the visitations with the parents had on the children. According to that testimony, Mother missed only a few scheduled times to see her children. However, during the visitations,

Mother was confrontational and did not follow visitation guidelines. For example, she would use derogatory language and talk about the child protection case and the judge. The visitation supervisor also observed that the children were upset by the visits and by the parents asserting that without them in the home, the parents could not collect certain welfare benefits.

Another licensed social worker--the primary worker on the case--described what was required of each parent in the case plan. Despite the progress Mother contends she made, the social worker provided testimony that Mother did not obtain employment, did not provide monthly budgets, did not keep the social worker updated on the parents' current address, did not complete required drug treatment, and did not regularly provide voluntary child support to the children while they remained in the state's custody. Moreover, the parents disallowed the social worker from entering their house at times (she was to be granted access to the home) and, on other occasions, were uncooperative and threatening to persons involved with the case. In her opinion, termination was in the best interests of the children because of the lack of follow-through and lack of completion of items in the case plan by the parents, because of the depth of improvements the children had shown in foster care, and because of the length of time the children had been in foster care. She testified that parental exposure had detrimental effects on the children's behavior and that granting additional time to the parents to work on the case plan would serve no purpose.

Finally, through other testimony, the Department presented evidence that Mother had a significant child protection history dating back to 2003. This history involved not only other reports and investigations regarding the children in this case--for example, they were placed under protective supervision in 2006--but also Mother's other children with whom she no longer had a significant relationship.

Although Mother objects to some of the factual findings by the magistrate, most of the evidence outlined above is unrefuted. For example, Mother objects to the finding that she was never employed during the pendency of the case, contending she was disabled and unable to work. However, Mother presented no evidence to the magistrate to support finding that she was disabled and unable to work; nor do we find any objection to the case plan including the provision that Mother participate in vocational rehabilitation and seek employment. Even if we were to disregard the factual findings disputed by Mother, there is nonetheless substantial and competent evidence that termination was in the best interests of the children. Summarizing the

6

testimony of the numerous witnesses, evidence showed that the children's behavior and mental health issues improved after removal from the parents' home, Mother's parenting behavior at visitations was often inappropriate and misdirected, visitations had visible and lingering negative effects on the children, the parents and their home life continued to lack the stability the children needed for permanency, and any progress the parents made on the case plan in the nearly two years of the pendency of the case had been temporary.

Further, the evidence in this case is not commensurate with the evidence in *Dep't of Health & Welfare v. Doe*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011), the case on which Mother relies to support her argument that the magistrate's decision to terminate her parental rights was premature. Unlike the parent in *Doe*, 150 Idaho 752, 250 P.3d 803, Mother has not been consistent with her progress on the case plan, she has not followed substantially all of the recommendations and requirements in the case plan, and she has no fairly determinate timeframe that would provide her the ability to complete the case plan and provide a suitable environment for the mental and physical wellbeing of her children. The magistrate did not err in determining that termination of Mother's parental rights was in the best interests of the children, nor did it err in finding that a grant of additional time to complete the case plan was unnecessary.

## IV.

## CONCLUSION

We conclude the magistrate's decision that termination of Mother's parental rights was in the best interests of the children is supported by substantial and competent evidence and that decision was not premature. Accordingly, we affirm the decree of the magistrate terminating the parental rights of Mother.

Judge LANSING and Judge MELANSON **CONCUR.**