**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41842**

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN (2014-07) DOE. | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) | 2014 Unpublished Opinion No. 511 |
| | ) | Filed: May 19, 2014 |
| Petitioner-Respondent, | ) ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| JOHN (2014-07) DOE, | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Carolyn M. Minder, Magistrate.

Decree terminating parental rights, <u>affirmed</u>.

Randall S. Barnum, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Marcy J. Spilker, Deputy Attorney General, Lewiston, for respondent.

_____

MELANSON, Judge

John Doe appeals from the magistrate's decree terminating his parental rights to his two children. For the reasons set forth below, we affirm.

**I.**

**PROCEDURAL HISTORY**

In June 2012, the Idaho Department of Health and Welfare filed a petition for hearing under the Child Protective Act (CPA). The petition identified two children, ages one and three, that the Department removed from their mother's care (Jane Doe) after law enforcement found the children to be in imminent danger. The petition requested that the children be placed in the Department's custody due to neglect by John and Jane. Both parents waived their right to a shelter care hearing. The magistrate entered an order of temporary custody as to the parents,

1

placing both children in the Department's custody. John and Jane signed stipulations vesting custody of the children in the Department. The magistrate entered findings of fact, conclusions of law, and an order of legal custody as to the children. The magistrate also approved a case plan for each parent.

After the children had been in the Department's custody for twelve months, the magistrate conducted a permanency hearing to review the plan for permanent placement of the children. At the hearing, the magistrate granted a three-month extension of foster care with the primary goal of returning the children home with Jane.

In October 2013, the Department filed a petition for termination alleging John and Jane neglected the children. Each parent responded to the petition. The magistrate held a trial on the termination petition over the course of two days. John and Jane appeared at trial, each with their respective attorneys. After trial, the magistrate entered a memorandum decision and order terminating the parental rights of both John and Jane. The magistrate concluded each had neglected the children and that it was in the children's best interest to terminate the parent-child relationship. John appeals.

## II.

## FACTUAL BACKGROUND

In June 2012, officers responded to Jane's home regarding a call from family members. The call indicated family members discovered the children unsupervised and naked. One child had feces on her and the other child had a bruise on her forehead and scratches on her leg. Officers discovered Jane intoxicated, passed out, and incapable of caring for the children. Officers also observed food items strewn about the kitchen and living room area. It appeared that the children attempted to feed themselves and spilled the food in the process. Officers also discovered children's clothing with fecal matter inside and fecal matter inside a bathtub. Officers arrested Jane for injury to a child, at which time Jane became combative and hostile toward officers.[1] During this time, John was incarcerated on convictions for domestic violence in the presence of children and violation of a no-contact order. However, John was released from jail twenty-one days after the children were taken into custody.

---

[1]    Jane had a history of alcohol abuse that continued throughout the CPA case and termination proceedings.

2

Following his release from jail, John began visitation with the children. John also began attending parenting courses in accordance with his case plan. John appeared to be making progress but, in February 2013, John was arrested for driving under the influence (DUI). In March 2013, he absconded from probation and ceased contact with the children, the Department, and his probation officer. In September 2013, John turned himself in to authorities. The district court revoked John's probation and sentenced John to 650 days in jail.

At the time of trial, the children were three and five years of age and had been in the Department's custody for eighteen months. The magistrate heard testimony from twelve witnesses over the course of two days. Numerous exhibits were admitted into evidence. The magistrate found by clear and convincing evidence that John had neglected the children. Specifically, the magistrate found John was unable to discharge his responsibility to and for the children and, as a result of such inability, the children lacked the parental care necessary for their health, safety, and well-being. The magistrate also found John neglected the children by failing to comply with the magistrate's orders or the case plan and determined it was in the best interest of the children to terminate John's parental rights.

## III.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

3

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## IV.

## ANALYSIS

### A. Reasonable Efforts to Reunite Children

John argues the magistrate erred in concluding the Department made reasonable efforts to reunite the children with him. John bases this argument on U.S. Public Law 96-272, which provides in part, "in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home." Idaho's Child Protective Act has a similar requirement that, absent aggravating circumstances, when a child is removed from the home, the petition shall state that reasonable efforts were made to prevent the removal of the

child from his or her home and the case plan must provide reasonable efforts to reunify the family.

Assuming that failing to make reasonable efforts to eliminate the need for removal of the children in a child protection case provides a viable defense in a termination case, John has failed to demonstrate the magistrate erred. The gravamen of John's claim of error is that the Department "treated the fate of the children's relationship with [John] as wholly contingent on the outcome of any determination as to [Jane's] fitness." However, John's argument fails to take into account his own actions. John failed to provide evidence of stable housing, failed to provide evidence of income, and was incarcerated for a substantial portion of time during the proceedings. Additionally, the Department attempted to take steps toward reestablishing a meaningful relationship between John and the children. The Department facilitated visitation, parenting classes, and video conferences with John. However, as soon as John began making progress on his case plan, he absconded from probation and ceased all communication with his children and the Department. Thus, the district court did not err in finding the Department made reasonable efforts to eliminate the need for the removal of the children.

## B.     Neglect

John argues the magistrate erred in concluding the Department proved the existence of neglect by clear and convincing evidence. Specifically, John asserts the magistrate failed to consider the efforts John made to continue his parental relationship with his children.

Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(26), as well as situations where the parent has failed to comply with the court's orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Here, the magistrate found neglect under I.C. § 16-1602(26)(b) and I.C. §§ 2002(3)(b)(i) and (ii). Each will be addressed in turn.

### 1.     Inability to discharge parental responsibilities

Idaho Code Section 16-1602(26)(b) provides that "neglected" means a child, "[w]hose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being." The magistrate found that John was unable to discharge his parental

5

responsibilities and to provide proper parental care for his children. There is substantial and competent evidence to support this finding.

John has an extensive criminal history that includes crimes of violence. John's record reveals three domestic assault convictions, two battery convictions, four DUI convictions, three disturbing the peace convictions, a disorderly conduct conviction, and a burglary conviction. Many of these crimes resulted in incarceration. John also violated probation on numerous occasions. The magistrate found that John's criminal record demonstrated a pattern of criminality which would continue indefinitely and made him unfit to parent. This finding is supported by substantial evidence in the record.

Furthermore, John has never provided a stable home. As previously noted, John has been incarcerated for much of the children's lives. In 2011, John committed domestic battery on Jane in the children's presence. As a result, John was convicted, went to jail, and a no-contact order was put into place protecting Jane. John violated this order on numerous occasions. John was incarcerated at the time the children were declared in imminent danger in 2012.

Twenty-one days after the children's removal, John was released from jail. During the following eight months, John worked his case plan and appeared to be making progress. John completed parenting classes and visited with his children. The magistrate expressly considered these factors. However, despite this progress, John absconded from probation and left the state in March 2013. He did not provide notice to the Department or his probation officer.[2] John ceased communication with his children and quit working his case plan. At this time, John had completed only twenty-five out of fifty-two sessions for domestic violence treatment. As a result of this conduct, a probation violation was filed. John did not return to Idaho until September 2013, when he turned himself in. His probation was revoked and the district court imposed a sentence of 650 days in jail. At the time of the termination trial in December 2013, John was still incarcerated. In addition, John also had an outstanding warrant for his arrest on a DUI charge and his probation officer had recently filed another report of probation violation.

In short, John's criminal activity and incarceration have resulted in very limited contact with his children and the inability of John to provide the care necessary for their health, safety, or

---

[2] At this time, John was on probation for domestic violence in the presence of children, violation of a no-contact order, and DUI.

well-being. John is solely responsible for these circumstances. Thus, the magistrate's finding of neglect under I.C. § 16-1602(26)(b) is supported by substantial and competent evidence.

**2.    Failure to comply with the case plan**

Neglect may also occur where:

> The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
> (i)    The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
> (ii)   Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

I.C. § 16-2002(3)(b). It is undisputed that the Department had custody of the children for eighteen months at the time of trial. Thus, the sole issue is whether John failed to comply with the case plan.

In addressing this issue, the magistrate recognized John completed the parenting education course and began to cooperate with the parenting coach when John visited with the children. However, the magistrate then articulated John's shortcomings:

> He did not maintain a stable home long enough to have in-home service put in place. He provided no proof of income or employment throughout the time after he was released from jail in October 2012 until the present. He never had housing of his own. [John] had no stability in his day-to-day living; he never followed through with the recommendations of a mental health assessment, and he was not an active participant in his children's lives, nor did he provide for their daily needs.

Based on these factors, the magistrate concluded John failed to comply with the case plan.

The approved case plan enumerated several tasks that John needed to complete before he could be reunited with the children. The goal of the plan was to enable John to provide a safe, stable, nurturing, and healthy environment for the children. One of the required tasks was that John obtain stable housing, free of health and safety hazards. John not only failed to establish stable housing, but spent a substantial portion of time incarcerated during this period and was still incarcerated at the time of trial.

The case plan also required John to obtain a legitimate source of income to meet his needs and the needs of his children and to provide the Department with proof of such income.

7

While John claimed to be self-employed, John failed to provide the Department with verification of employment or any income. Thus, John failed to comply with this aspect of the case plan.

Further, the case plan required John to become an active participant in his children's lives by meeting their physical, developmental, mental health, and educational needs. While John made progress from June 2012 to March 2013, he absconded from probation, left the state, and ceased all communication with his children. Following his return, John was once again incarcerated. John failed to become an active participant in his children's lives and failed to meet any of their basic needs.

Even where a parent makes some progress on a case plan, termination is proper where the parent fails to meet the primary requirements of the plan. *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 502, 260 P.3d 1169, 1173 (2011). Here, John failed to meet the primary requirements of the case plan--obtaining stable housing, employment, and establishing a relationship with his children. Thus, the magistrate's finding of neglect under I.C. § 16-2002(3)(b) was supported by substantial and competent evidence.

## C. Best Interest of the Children

John contends the magistrate erred in concluding termination was in the best interest of the children. Specifically, John contends the magistrate did not properly consider the impact that the termination would have on the children. The Department responds that substantial and competent evidence supports the magistrate's finding.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interest of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). Expert testimony is not required to establish that termination would be in the child's best interest. *Doe v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999). When determining whether termination is in the child's best interest, the trial court may consider the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014); *see Doe*, 133 Idaho at 809-10, 992 P.2d at 1209-10; *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). A finding that it is in the best interest of the child to terminate

parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *Doe*, 152 Idaho at 957, 277 P.3d at 404.

For the reasons previously articulated above, termination was in the best interest of the children. During the course of proceedings, John not only failed to improve his situation, but continued to engage in conduct deleterious to ever establishing a relationship with his children. During the time the children were in the Department's custody, John only paid child support for two months. His lack of stable housing, lack of income, absence from the children's lives and continued criminality, all demonstrate termination was in the best interest of the children. Thus, the magistrate did not err.

## V.

## CONCLUSION

There is substantial and competent evidence to support the magistrate's finding of neglect under I.C. § 16-1602(26)(b) and I.C. §§ 2002(3)(b)(i) and (ii) and that termination was in the best interest of the children. Accordingly, the magistrate's decree terminating John's parental rights to his two children is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR.**