IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41836

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2014-06) DOE. | ) ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) | 2014 Unpublished Opinion No. 510 |
| | ) | Filed: May 19, 2014 |
| Petitioner-Respondent, | ) ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| | ) | THIS IS AN UNPUBLISHED |
| JANE (2014-06) DOE, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Carolyn M. Minder, Magistrate.

Decree terminating parental rights, <u>affirmed</u>.

Alan E. Trimming, Ada County Public Defender; Tahja L. Jensen, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Marcy J. Spilker, Deputy Attorney General, Lewiston, for respondent.

_____

MELANSON, Judge

Jane Doe appeals from the magistrate's decree terminating her parental rights to her two children.  For the reasons set forth below, we affirm.

## I.

## PROCEDURAL HISTORY

In June 2012, the Idaho Department of Health and Welfare filed a petition for hearing under the Child Protective Act (CPA).  The petition identified two children, ages one and three, that the Department removed from Jane after law enforcement found the children to be in imminent danger.  The petition requested that the children be placed in the Department's custody due to neglect by Jane and the father (John Doe).  Both parents waived their right to a shelter care hearing.  The magistrate entered an order of temporary custody as to the parents, placing

1

both children in the Department's custody. Jane and John signed stipulations vesting custody of the children in the Department. The magistrate entered findings of fact, conclusions of law, and an order of legal custody as to the children. The magistrate also approved a case plan for each parent.

After the children had been in the Department's custody for twelve months, the magistrate conducted a permanency hearing to review the plan for permanent placement of the children. At the hearing, the magistrate granted a three-month extension of foster care with the primary goal of returning the children home with Jane.

In October 2013, the Department filed a petition for termination alleging Jane and John neglected the children. Each parent responded to the petition. The magistrate held a trial on the termination petition over the course of two days. Jane and John appeared at trial, each with their respective attorneys. After trial, the magistrate entered a memorandum decision and order terminating the parental rights of both Jane and John. The magistrate concluded each had neglected the children and that it was in the children's best interest to terminate the parent-child relationship. Jane appeals.

## II.

## FACTUAL BACKGROUND

In June 2012, officers responded to Jane's home regarding a call from family members. The call indicated family members discovered the children unsupervised and naked. One child had feces on her and the other child had a bruise on her forehead and scratches on her leg. Officers discovered Jane intoxicated, passed out, and incapable of caring for the children. Officers also observed food items strewn about the kitchen and living room area. It appeared that the children attempted to feed themselves, and spilled the food in the process. Officers also discovered children's clothing with fecal matter inside and fecal matter inside a bathtub. Officers arrested Jane for injury to a child, at which time Jane became combative and hostile toward officers.[1]

At the time of trial, the children were three and five years of age and had been in the Department's custody for eighteen months. The magistrate heard testimony from twelve witnesses over the course of two days. Numerous exhibits were admitted into evidence. The

---

[1] At the time the officers removed the children, John was incarcerated on convictions for domestic violence in the presence of children and violation of a no-contact order.

2

magistrate found by clear and convincing evidence that Jane had neglected the children. Specifically, the magistrate found Jane was unable to discharge her responsibility to and for the children and, as a result of such inability, the children lacked the parental care necessary for their health, safety, and well-being. The magistrate also found Jane neglected the children by failing to comply with the magistrate's orders or the case plan and determined it was in the best interest of the children to terminate Jane's parental rights. Jane appeals.

## III.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally

understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## IV.

## ANALYSIS

### A.    Neglect

Jane argues the magistrate erred in concluding the Department proved the existence of neglect by clear and convincing evidence. Specifically, Jane asserts the magistrate failed to consider the efforts Jane made to maintain sobriety, a stable home, and steady employment.

Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(26), as well as situations where the parent has failed to comply with the court's orders or the case plan in a CPA case, and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Here, the magistrate found neglect under I.C. § 16-1602(26)(b) and I.C. §§ 2002(3)(b)(i) and (ii). Each basis will be addressed in turn.

#### 1.    Inability to discharge parental responsibilities

Idaho Code Section 16-1602(26)(b) provides that "neglected" means a child, "[w]hose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being." The magistrate found that Jane was unable to discharge her parental

4

responsibilities and to provide proper parental care for her children. There is substantial and competent evidence to support this finding.

Jane's failure to remain sober formulated the primary reason for her inability to parent. Throughout the CPA case, Jane exhibited a pattern of sobriety followed by repeated relapses with alcohol. Jane's emotional instability exacerbated these problems. This history of problems with alcohol dated back before the Department declared the children to be in imminent danger. The record indicates Jane entered an alcohol treatment program in 2011, but the program discharged her for noncompliance. Jane engaged in a second treatment program in January 2012. Again, the treatment program discharged her just one month later for noncompliance.

The incident leading to the injury to child charges reveals a glimpse into how severe Jane's drinking problem was. On June 6, 2012, Jane began drinking at 3:00 a.m., and then went back to bed. When Jane awoke around 11:00 a.m., she took the children to the park. After this, she returned home and resumed drinking. At approximately 4:00 pm, officers responded to the home and discovered the children naked (one with feces on herself), food items strewn about the house, an unloaded shotgun in an area accessible to the children, clothing from one of the children with fecal matter inside, and fecal matter in the bathtub. Officers found Jane passed out, intoxicated, and incapable of providing care for the children.[2]

After the children were placed in the Department's custody, Jane engaged in a third program for alcohol treatment. The program began in October 2012 and required Jane to attend counseling sessions and submit to random testing. Between October 2012 and December 2013, the program required that Jane take 114 drug tests. Jane failed to show up for 55 of these tests. As a result of these missed tests, Jane's probation officer filed a probation violation charge one month before trial. Further, the timing of the missed tests demonstrates Jane experienced problems with alcohol right up to the time of trial. Jane missed tests scheduled in October,

---

[2] Jane takes issue with the magistrate's finding that she was intoxicated when officers responded to the home. Jane contends the magistrate based this on information not adduced at trial but, rather, contained in the underlying CPA case. However, a review of the trial transcript belies this claim. An officer testified the police discovered Jane "passed out" in the home. The officer also testified he interviewed Jane the next day and that she appeared hung over and still smelled of alcohol. This is substantial and competent evidence to support the magistrate's finding that Jane was intoxicated when officers responded to the home.

November, and December of 2013--tests scheduled after the Department filed the petition for termination.

In addition to the missed tests, during July 2013, Jane tested positive for alcohol on three separate occasions. She admitted to alcohol use on these three occasions. One of these incidents occurred during an unsupervised visit between Jane and her children at a shelter for women and children. Workers discovered the children unsupervised in a community bathtub. When they confronted Jane about the incident, they observed signs of alcohol consumption. Jane denied any use. However, as the manager spoke with Jane, the manager could smell alcohol. When the manager informed Jane of this, she became very emotional. Two days later, Jane admitted to consuming alcohol that night. The substance abuse counselor from the shelter reported another incident in October 2013. At that time, Jane admitted to the counselor that she had been drinking for six days.

Furthermore, Jane suffered from emotional issues that went unmitigated throughout this period. Shortly after the children were placed in the Department's custody, Jane had a psychological assessment. The assessment resulted in the recommendation that Jane complete substance abuse treatment, develop a specific plan for preventing relapse, and stay out of the abusive relationship with John. Jane failed to follow these recommendations. She continued drinking and continued to have contact with John, despite a no-contact order being in place. Jane's emotional instability is highlighted at various points throughout the record. For example, when confronted about leaving her children unattended in the bathtub, Jane responded with an emotional outburst toward the worker at the shelter. Likewise, Jane's caseworker testified that Jane left her a screaming voicemail message in the middle of the night. Also, after Jane told her caseworker she had been drinking for six days, Jane became belligerent and became verbally abusive to her caseworker. In addition, Jane was charged with driving under the influence and incurred probation violations in both Ada and Canyon Counties.

The foregoing facts demonstrate Jane failed to achieve sobriety, and as a result, was unable to provide the parental care necessary for the health, safety or well-being of the children. Thus, the magistrate's finding of neglect under I.C. § 16-1602(26)(b) is supported by substantial and competent evidence.

### 2.     Failure to comply with the case plan

Neglect may also occur where:

The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:

      (i)     The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and

      (ii)     Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

I.C. § 16-2002(3)(b). It is undisputed that the Department had custody of the children for eighteen months at the time of trial. Thus, the sole issue is whether Jane failed to comply with the case plan.

When the Department removed the children from Jane's home, she was not able to care for them due to her level of intoxication. Because of these circumstances, Jane's case plan focused on substance abuse issues, sobriety, maintaining a safe and healthy home, and addressing mental health issues so that Jane could meet her children's needs. The most important task of the case plan required Jane to stay sober and comply with alcohol and drug testing. Jane failed this task in all relevant aspects. She missed 55 of 114 tests, had three positive tests in July 2013, and admitted to drinking for six days straight in October 2013. While Jane submitted to a psychological evaluation, she failed to successfully complete the recommendations set forth in the evaluation. This evaluation, along with the case plan, instructed Jane not to have contact with John. Jane disregarded these instructions and had continued contact.

Jane contends the magistrate erred because she made progress in working toward sobriety, maintained employment, maintained housing, completed parenting classes, and attended group treatment. However, the crux of the magistrate's ruling indicated Jane's inability to remain sober made it impossible for her to properly care for the children. As to this task, Jane did not make progress, but rather failed miserably. Without Jane's sobriety, her limited successes become insignificant. Even where a parent makes some progress on a case plan, termination is proper where the parent fails to meet the primary requirements of the plan. *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 502, 260 P.3d 1169, 1173 (2011). Here, the primary requirement of the plan was that Jane achieve sobriety. Thus, the magistrate's finding of neglect under I.C. § 16-2002(3)(b) was supported by substantial and competent evidence.

## C. Best Interest of the Children

Jane contends the magistrate erred in concluding termination was in the best interest of the children. Specifically, Jane contends the magistrate erred because her visits with the children went well and she and the children are very affectionate. The Departmnet responds that substantial and competent evidence supports the magistrate's finding.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interest of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). Expert testimony is not required to establish that termination would be in the child's best interest. *Doe v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999). When determining whether termination is in the child's best interest, the trial court may consider the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014); *see Doe*, 133 Idaho at 809-10, 992 P.2d at 1209-10; *Doe v. State*, *Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). A finding that it is in the best interest of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *Doe*, 152 Idaho at 957, 277 P.3d at 404.

For the reasons previously articulated above, termination was in the best interest of the children. During the course of proceedings, Jane not only failed to improve her situation, but continued to engage in the very conduct that led to the Department taking her children in the first place. Her inability to stay sober demonstrated termination was in the best interest of the children. Thus, the magistrate did not err.

## V.

## CONCLUSION

There is substantial and competent evidence to support the magistrate's finding of neglect under I.C. § 16-1602(26)(b) and I.C. §§ 2002(3)(b)(i) and (ii) and that termination was in the best interest of the children. Accordingly, the magistrate's decree terminating Jane's parental rights to her two children is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR.**