# IN THE SUPREME COURT OF THE STATE OF IDAHO

IN THE MATTER OF THE PARENTAL )
TERMINATION OF JOHN (2011-12) DOE. )
------------------------------------------------------------ )
IDAHO DEPARTMENT OF HEALTH & )
WELFARE, )
         )
    Petitioner-Respondent, )
         )
and )
         )
GUARDIAN AD LITEM, )
         )
    Respondent on Appeal, )
         )
v. )
         )
JOHN (2011-12) DOE, )
         )
    Respondent-Appellant. )

Docket No. 38890

Boise, November 2011 Term

2011 Opinion No. 123

Filed: November 30, 2011

Stephen W. Kenyon, Clerk

IN THE MATTER OF THE )
TERMINATION OF THE PARENTAL )
RIGHTS OF JANE (2011-13) DOE. )
------------------------------------------------------------ )
IDAHO DEPARTMENT OF HEALTH & )
WELFARE, )
         )
    Petitioner-Respondent, )
         )
and )
         )
GUARDIAN AD LITEM, )
         )
    Respondent on Appeal, )
v. )
         )
JANE (2011-13) DOE, )
         )
    Respondent-Appellant. )

Docket No. 38906

1

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Roger B. Harris, Magistrate Judge.

The order of the magistrate court is <u>affirmed</u>.

David W. Haley, Twin Falls, appeared for appellant John Doe.

Fuller Law Offices, Twin Falls, for appellant Jane Doe. Daniel S. Brown argued.

The Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent Idaho Department of Health & Welfare. James T. Baird argued.

Jamie A. LaMure, Kimberly, argued for respondent Guardian Ad Litem.

———————————

J. JONES, Justice.

John Doe (Father) and Jane Doe (Mother) appeal from an order terminating their parental rights. The two appellants have three children together, and Mother has an additional child with another man. The magistrate terminated the parental rights of both parents as to all children, holding that both Father and Mother neglected the children and that termination is in the children's best interest. We affirm the magistrate court.

## I.
## BACKGROUND

Father and Mother have three biological children together: G.H., D.H., and L.H. Mother also has another child, J.B., with a different man, who is not a party to this appeal. On October 28, 2009, Mother was arrested for possession of methamphetamine. The arresting officer declared all four children in imminent danger and took them into protective custody. The children have been in State custody ever since.

In June 2010, the State petitioned for termination of Mother's and Father's parental rights. The State's petition contended that both Mother and Father neglected the children—Mother, because she failed to complete the scheduled child protective case plan; Father, because he is currently incarcerated and unable to provide for the children. In the subsequent termination hearing, the parties stipulated that Mother and Father had been involved in numerous child protective proceedings—at least three, including the one beginning in October 2009. Mother further stipulated "that she had put forth very little, if any, effort to comply with the December

2009 case plan prior to the time the State filed its petition to terminate her parental rights in this matter." During the two-day hearing on the petition for termination, the magistrate court heard testimony regarding Mother from fifteen witnesses, including several social workers and counselors, a psychologist, one of the children's foster parents, and Mother herself.

Although Father's briefing does little to explain why, Father appeared through counsel in the proceedings below but failed to make any argument or present any evidence in support of his parental rights. It appears that in both prior child protection cases, Father failed to complete the case plans assigned to him, apparently making no significant progress in either case. During the present case, Father was serving a sentence in the state penitentiary for domestic battery, had been imprisoned for some time, and is not eligible for parole until October 2013.[1] Although there is some evidence in the record of a bond between Father and his children, Father has not participated in a case plan in the present case.

In its memorandum decision, the court weighed the trial evidence and ultimately determined that Father and Mother neglected their children and that termination of their parental rights was in the children's best interest. Both parents timely appealed. We must now determine whether there is substantial, competent evidence to support the magistrate judge's decision to terminate Mother's and Father's parental rights, and whether, as Mother argues, the State is estopped from seeking to terminate her rights.

## II.
## DISCUSSION

### A.    Standard of Review.

This Court recently reiterated the standard of review in parental rights termination cases:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's

---

[1] He will not complete his full sentence until October 2018.

3

judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.

*Idaho Dep't of Health & Welfare v. Doe*, __ Idaho __ , 260 P.3d 1169, 1171–72 (quoting

*Idaho Dep't Health & Welfare v. Doe II*, 150 Idaho 36, 41, 244 P.3d 180, 185 (2010)).

### B.  A court may terminate parental rights when it finds that a child is neglected and when termination is in the best interest of the child.

A court may order parental rights terminated "where it finds that termination . . . is in the best interests of the child and that one (1) or more [statutorily defined] conditions exist." I.C. § 16-2005(1). One of those conditions is that "[t]he parent has neglected . . . the child." I.C. § 16-2005(1)(b). The Idaho Code defines "neglected" as:

(a) Conduct as defined in section 16-1602(25), Idaho Code; or

(b) The parent(s) has [or have] failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9), Idaho Code.

I.C. § 16-2002(3). In turn, I.C. § 16-1602(25) states that a "neglected" child is one

(a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; . . . or

(b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . .

Idaho Code § 16-1629(9) contemplates a timeframe for reunification of fifteen consecutive months, when a child is in the State's custody and out of the home of the parent. *See* I.C. § 16-1629(9) (creating a rebuttable presumption that the State must petition to terminate parental rights when a child is in State custody and out of the parent's home for fifteen months in any twenty-two month period).

In this case, the court determined that both Mother and Father neglected the children. The court also found that "[t]he children need a stable family and parents who can provide them with consistency, stability and proper guidance. In addition, the children's behavioral and mental health issues seemed to have greatly improved since being placed into foster care." The

court therefore determined that termination would be in the children's best interest and so terminated Mother's and Father's rights.

### C. Substantial and competent evidence supports the court's decision to terminate Mother's parental rights.

The magistrate's decision is well-reasoned, detailed, and thoughtful. The court expressly noted its obligation to terminate parental rights only if the State proved its case by clear and convincing evidence. The court then articulated numerous grounds for its findings that Mother neglected her children and that termination was in the children's best interest. First, the magistrate noted that Mother has "a long history of child protection referrals dating back to 2003 . . . . Each of th[e] previous cases dealt with [ ] some or all of the issues present in the underlying 2009 case." The magistrate then considered a number of factors relevant to the State's allegation of neglect. The court found that Mother keeps a clean, tidy home but is unable to pay rent or household expenses without the help of roommates. This reliance on roommates, according to social worker testimony, creates an inappropriate living situation for Mother's children. Furthermore, Mother's own testimony and self-provided financial information led the court to conclude that Mother is unable, without the help of roommates, to afford a home large enough for her children. Mother testified "that even if the court were to order return of the children that day, she would not have the ability to take them for at least 30–45 days."

The court also found that Mother's chemical dependency and anger issues contributed to its conclusion that Mother neglected her children. According to the trial testimony, Mother failed to complete the drug treatment programs mandated by her case plan. Nor did Mother timely seek help with her anger management, as the case plan required. According to the magistrate, "[Mother's] case workers and care providers worked hard to try and help her succeed on her case plan. Unfortunately, [Mother] was not willing to put for[th] the same amount of effort to help herself until after the petition [for termination] had already been filed."

Mother also missed a number of scheduled visits with her children since the children have been in State custody. The visits she has had "were described as becoming chaotic" as the visits went on. Mother, the court found, "has difficulty properly managing all four children at the same time without getting frustrated," and the State caseworkers assigned to her case "do not feel she has completed the [visitation] terms of the case plan." "Her continued inappropriate comments during observed visits [with the children], as late as February of 2011, evidence

5

[Mother's] inability to put the children['s] mental health and wellbeing before her own emotional needs."

Mother has continually struggled to secure long-term employment. Mother was unemployed during the trial and had worked only sporadically during the preceding eighteen months. "There was no explanation why [Mother] cannot find and maintain full time employment." Based on this, the magistrate concluded that Mother lacked "a commitment to gain financial stability during the seventeen or so months the case plan has been in effect" and Mother is unlikely to change her ways even if given more time to complete the case plan.

Moreover, the court found that the children have adjusted to, grown emotionally, and generally excelled in the relative stability and consistency of foster care. J.B., the oldest child, even testified that he would prefer to stay in foster care because he feels safe and secure there and because he is afraid that Mother will relapse.

Finally, the magistrate recognized that Mother has made strides to complete her case plan since October 2010, but it noted that "[Mother] freely admits she didn't do much on the case plan" until then. By the time of trial, Mother had not complied with the terms of her original case plan. Nor had she completed the updated case plan the court ordered in October 2010.

For all of these reasons, the magistrate concluded that Mother, despite recent success with sobriety and in working on her case plan, "has a very unstable lifestyle and she does not have the sustained ability to provide [her] children with the parental care necessary to protect their health, safety and well-being." The magistrate therefore decided that Mother neglected her children, as defined by I.C. § 16-1602(25). Furthermore, Mother did not complete her case plan; and she did not reunite with her children within the requisite timeframe because the children lived in foster care for eighteen months preceding trial. The magistrate therefore determined that Mother also neglected her children as defined by I.C. § 16-2002(3)(b).

The magistrate then concluded that terminating Mother's parental rights would be in the children's best interest. The court reached this result for a number of reasons: social workers on the case recommended it; the children have been in foster care for three-and-a-half of the past five years; Mother is unable to adequately provide for the children due to chronic unemployment and chemical dependency; Mother is unable to prioritize the children's physical and emotional needs; the children's need for stability outweighs Mother's liberty interest in raising the children;

6

and, despite Mother's apparent love for her children, there is little chance for reunification.

On Appeal, Mother would simply have this Court reweigh the evidence and reach a different result. Mother argues, generally, that the magistrate could not find by clear and convincing evidence that she has neglected her children. Mother's argument focuses on her most recent child protective proceeding case plan, contending that, since May 2010, she has substantially met her case plan obligations. Mother relies almost exclusively on the testimony of Shelly Larson, the social worker assigned to her case. Mother also argues, albeit in passing, that the State has failed to make all possible efforts to reunite her with the children. Mother does not, however, make any argument regarding the magistrate's finding that termination is in the children's best interest.

The State points out that Mother has been involved with child protective proceedings and court-ordered case plans for much of the past eight years. According to the State, it provided ample resources and support for Mother over that eight-year period. The State also notes that, despite Mother's recent progress, she has failed to complete a case plan, and a number of prior Idaho cases have upheld termination on similar facts.

We have said in several termination cases that our role is not to reweigh the evidence on appeal. *Idaho Dep't of Health & Welfare v. Doe*, __ Idaho __ , 260 P.3d 1169, 1175–76 (2011) (quoting *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010)). Indeed, it has become axiomatic that "[w]here a trial court has noted explicitly and applied a clear and convincing standard, [this Court] will not disturb the trial court's findings unless they are not supported by substantial and competent evidence." *Id.* (quoting *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010)). Yet, despite this well-accepted standard, Mother asks us to revisit the magistrate's findings without any real argument that the evidence was deficient. She relies on a single witness' testimony in asking the Court to overturn the magistrate's findings. The magistrate, however, explicitly noted that it applied a clear and convincing evidence standard; and it evaluated in considerable detail the testimony of fifteen witnesses, none of whom suggested Mother was an able parent. Furthermore, the evidence that Mother has not completed her most recent case plan is uncontested; and her children have lived outside her home for the eighteen months preceding the trial. The magistrate noted that despite Mother's recent progress, she was entirely unwilling to work at reuniting with the children before October 2010. In sum, the

magistrate court adequately considered all the evidence before it, including the testimony Mother asks this Court to focus on. With little exception, the evidence points to Mother's inability to provide for her children. Accordingly, we conclude that substantial, competent evidence supports the magistrate's finding that Mother neglected her children.

The magistrate similarly relied on substantial, competent evidence in deciding that termination was in the children's best interest. Again, the court relied on considerable testimony that the children needed stability, which Mother admitted, by her own verbal and non-verbal actions before and during trial, she could not provide. We therefore conclude that substantial, competent evidence supports the magistrate's finding that termination is in the children's best interest.

**D. The State is not estopped from seeking termination of Mother's parental rights.**

On appeal, Mother advances an estoppel argument based on her characterization of the October 2010 case-plan revisions as a "new" case plan. Mother contends that she substantially complied with the revised plan and therefore asks the Court to hold that the State is estopped from seeking termination while mother works to complete it. In her opening brief, Mother cites no authority for this proposition; and in her reply brief, she relies on a several cases deciding matters of real property and water law.

Mother's argument is inapposite. The magistrate considered Mother's recent progress on the October 2010 case-plan revisions as a factor in his decision. He nonetheless determined that that limited success did not outweigh the evidence supporting a finding of neglect under I.C. § 16-1602(25). Mother also failed to *complete* the revised plan within the timeframe contemplated by I.C. § 16-2002(3)(b) and therefore neglected her children under that statutory section, too. Accordingly, we hold that the State is not estopped from seeking to terminate Mother's rights.

**E. Substantial and competent evidence supports the court's decision to terminate Father's parental rights.**

Although the magistrate court was significantly less thorough in its treatment of Father's case,[2] it also found through clear and convincing evidence that Father had neglected his three children—G.H., D.H., and L.H.—and that it was in their best interest that his rights be

---

[2] As discussed above, this is likely because Father failed to produce any evidence at trial.

terminated. As to the "neglect" prong of the termination standard under I.C. § 16-2005, the court found:

> As for [Father], the evidence was undisputed that [Father] is currently serving a prison sentence and that he will not be eligible for parole until late 2013. Likewise, the testimony and evidence was undisputed and shows that he has not been available to work a case plan either. Accordingly, this court must conclude that he presently lacks the ability to . . . provide these children with the parental care necessary to protect their health, safety and well-being. As such, they are "neglected" as defined by *Idaho Code* § 16-1602(25).

The court also found that Father had neglected his children pursuant to section 16-2002(3)(b) because he had neither completed a case plan nor reunited with the children within the time limits of section 16-1629(9); in fact, reunification would be impossible for at least another two years due to his imprisonment. As to the "best interest" prong, the magistrate found that because Father is in prison and not eligible for parole until late 2013, "he is clearly not available to be a resource for the children." The court also found that due to Father's incarceration and Mother's proven inability to maintain a stable home, reunification would be unlikely. The court stated that the children have shown improvement in foster care and now deserve to be permanently placed in a more stable family environment which Father is simply unable to provide.

The magistrate's decision that Father's children are neglected under I.C. § 16-2005 is supported by substantial and competent evidence. Under section 16-1602(25), a parent in prison for a substantial part of his children's lives clearly cannot provide any amount of "parental care and control, or subsistence, medical or other care or control necessary for [their] well-being." I.C. § 16-1602(25)(a). Further, an incarcerated parent is certainly "unable to discharge [his] responsibilities to and for" his children and, he is leaving his children without "the parental care necessary for [their] health, safety or well-being." I.C. § 16-1602(25)(b). Thus, Father's imprisonment alone constitutes neglect under section 16-1602(25). Further, the magistrate also heard competent evidence presented by Father's past social workers that Father had never completed a case plan in any of the prior or present child protective cases, which this Court has held may be taken into account in determining neglect under section 16-1602(25). *In re Doe*, 151 Idaho 356, 365, 256 P.3d 764, 773 (2011). Moreover, Father's undisputed failure to complete a case plan and inability to reunify with the children for at least another two years also necessitates a finding of neglect under section 16-2002(3)(b).

9

The magistrate's finding that termination of Father's rights is in the best interest of his three children is also supported by substantial and competent evidence. The magistrate was presented with substantial, unrebutted expert testimony that the children were thriving in foster care and that placing them in a permanent, stable family environment would be crucial to their continued success. The magistrate's conclusion that the interests of the children would be best served by allowing them the opportunity to be placed in a permanent family home was therefore supported by substantial, competent evidence.

In sum, because there was substantial and competent evidence to support the magistrate's findings that Father's children are neglected and that termination of his rights is in their best interest, we will not disturb those findings.

## III.
## CONCLUSION

We affirm the magistrate court's order terminating John and Jane Doe's parental rights. Costs are awarded to Respondents.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.