**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44798**

| | | |
|---|---|---|
| In the Matter of JOHN DOE, A Child Under Eighteen (18) Years of Age. | ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | 2017 Unpublished Opinion No. 483 |
| | ) | Filed: June 1, 2017 |
| Petitioner-Respondent, | ) ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| JOHN DOE I (2017-8), | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Bryan K. Murray, Magistrate.

Judgment terminating parental rights, affirmed.

Randall Schulthies, Bannock County Public Defender; Sara C. Archibald, Deputy Appellate Public Defender, Pocatello, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Seamons, Deputy Attorney General, Pocatello, for respondent.

_____

GUTIERREZ, Judge

John Doe I appeals from the magistrate's judgment terminating John's parental rights. John specifically argues the magistrate erred in terminating John's parental rights based on abandonment, neglect, inability to discharge parental responsibilities, incarceration, and the best interests of the child. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

John and Jane Doe's son, A.F., was born on August 10, 2010. Since 2011, the Department of Health and Welfare ("Department") has received nineteen reports of suspected child abuse and neglect of A.F.

1

In January 2014, John was in a drunk-driving accident causing injury to three girls and totaling two vehicles. John was arrested in February 2014 and remained in jail until sentencing. John was sentenced in October 2014 for three counts of aggravated driving under the influence (DUI). His sentence satisfaction date is February 5, 2029. His next parole hearing date is in September 2019, and his next parole eligibility date is February 6, 2020.

In September 2015, A.F.'s mother, Jane, "had [A.F.] on a busy street, walking in the middle of the street, and law enforcement had to direct [Jane] out of traffic." Jane was under the influence of amphetamines and methamphetamine. Law enforcement declared imminent danger due to the fact that Jane and A.F. were walking in the middle of the street, and Jane did not see any reason to believe this behavior was unsafe. Soon after, the Department took temporary custody of A.F. and placed him in shelter care.

The Bannock County prosecutor subsequently filed a petition pursuant to the Child Protective Act. The magistrate placed A.F. into the legal custody of the Department, and case plans were developed for John and Jane. Jane failed to comply with her case plan, which included a goal of reunification--specifically, to reunite A.F. with the parent from whose home the child was removed. Because John was incarcerated, Jane was the parent from whose home the child was removed. John complied with his case plan, which was developed according to his circumstances of incarceration. John maintained contact with A.F. through telephone calls, letters, pages to color, and gifts. John's case plan included a concurrent plan that provided A.F. would either return to the home of Jane or be adopted by a relative. Thus, once reunification between A.F. and Jane became impossible (upon Jane's failure to comply with the case plan), the Department placed A.F. in the care of his maternal uncle who lives in California.

In November 2016, the Department filed a petition to terminate both John's and Jane's parental rights. The magistrate conducted the termination hearing in January 2017. The State called A.F.'s counselor to the stand, who testified about A.F.'s anxiety, anger issues, and abandonment issues. The counselor testified that termination would be in A.F.'s best interests if John was unable to provide permanency and stability for A.F.; if John was unable to discharge his parental responsibilities for A.F.; if this inability will continue for a prolonged and indeterminate period; if this prolonged and indeterminate inability would be injurious to the health, morals, and well-being of A.F.; and if John was likely to remain incarcerated for a substantial period of the minority of A.F. John called a witness to the stand who was the owner

2

of the child care center that A.F. attended. The witness testified that John inquired about parenting advice, child development, social development, and what John could do to help A.F. grow. John and Jane also took the stand--they both agreed A.F. was in a good situation with his uncle in California.

The magistrate ultimately terminated the parental rights of both John and Jane. In terminating Jane's parental rights, the magistrate reasoned that Jane did not comply with her case plan, had no ability to parent or care for A.F., did not recognize the need for help with Jane's substance abuse and mental health issues, and had no motivation to complete treatment for her substance abuse issues.[1] In terminating John's parental rights, the magistrate reasoned that when John went to jail in 2014, he knew he was leaving A.F. in a dangerous situation with Jane, and John never did anything to protect A.F. from Jane. The magistrate noted that John complied with his case plan, but that due to John's incarceration, John was unable to provide for the health, support, supervision, care, and well-being of A.F. for over three years. Moreover, the magistrate determined that reunification of A.F. with John was impossible because John is likely to remain incarcerated for a substantial period of time during A.F.'s minority and because A.F. may be an adult before John is released from prison. Finally, the magistrate found that A.F., who is staying with his uncle, appears to be stable for the first time in A.F.'s life, and it is in his best interests to remain stable. John appeals from the magistrate's judgment terminating John's parental rights.

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a

---

[1] Jane did not appeal from the magistrate's termination of her parental rights.

3

court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Here, the magistrate terminated John's parental rights after concluding John abandoned A.F., neglected A.F., was unable to discharge parental responsibilities, and would likely remain incarcerated for a substantial period of time.

A.     Neglect

John argues the magistrate erred in finding John neglected A.F. because John completed his case plan and complied with the court's orders. A finding of neglect, coupled with the

determination that termination is in the best interests of the child, is grounds for terminating the parent-child relationship. I.C. § 16-2005(1)(b).

Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(31), as well as situations where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case, and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

The magistrate determined that John, due to his incarceration, failed to provide for the health, support, supervision, care, and well-being of A.F. for over three years. Additionally, the magistrate found that John exhibited chronic neglect of A.F., and the neglect was so extreme and repetitious to indicate any continuing relationship would result in unacceptable risk to A.F.'s health and welfare. The magistrate noted that John could have done much more for A.F. and that John went to prison knowing A.F. would be left in a dangerous situation with his mother.

John argues, however, that before he was incarcerated, he was an active caregiver who provided for the health, morals, and well-being of A.F. Moreover, John argues that even while he was incarcerated, he attempted to arrange a guardianship for A.F. John notes he was restricted in his parental abilities while he was incarcerated, but maintains he did all he was able to do for A.F. Accordingly, John contends there was insufficient evidence to find that he chronically neglected A.F.

In *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 846, 848, 264 P.3d 953, 955 (2011), the Supreme Court reviewed a magistrate's finding of neglect, which was based on the father's incarceration "for some time" and during the case proceedings. The State petitioned for termination of the father's parental rights in June 2010, and the father was not eligible for parole until late 2013. *Id.* The Supreme Court affirmed the magistrate's finding of neglect, reasoning "a parent in prison for a substantial part of his children's lives clearly cannot provide any amount of parental care and control, or subsistence, medical or other care or control necessary for [their]

5

well-being." *Id.* at 852, 264 P.3d at 959 (internal quotation marks omitted). Moreover, the Court noted that even though there was some evidence of a bond between the father and his children, "an incarcerated parent is certainly unable to discharge [his] responsibilities to and for his children and, he is leaving his children without the parental care necessary for [their] health, safety or well-being." *Id.* (internal quotation marks omitted). While the Court found additional grounds for neglect (such as the father's failure to complete a case plan and his inability to reunify with his children for at least another two years), the Court concluded "Father's imprisonment alone constitutes neglect." *Id.*

Here, too, John has been incarcerated for over three years, and his next parole hearing is not for another two years. A.F. was three years old when John was first incarcerated on his DUI charges, and now A.F. is six years old. By the time John may be eligible for parole, A.F. will be nine years old--which means that John will have been incarcerated for six years of A.F.'s nine-year life. Moreover, there is no certainty John will be released early--as the magistrate noted, John served the full seven years of a seven-year sentence in Wisconsin for drug trafficking. If John remains incarcerated until his sentence satisfaction date in 2029, A.F. will no longer be a minor. Accordingly, like the father in *Doe*, John has been and will be incarcerated for a substantial part of A.F.'s minority.

Although the record demonstrates John had a bond with A.F., communicated with A.F., checked in on A.F., and complied with the case plan, John's incarceration prevents him from providing parental care or control, subsistence, and medical or other care or control necessary for A.F.'s well-being. John's incarceration renders him unable to discharge his parental responsibilities and, as such, A.F. lacks the parental care necessary for his health, safety, or well-being. Therefore, the magistrate did not err in determining John neglected A.F. Because we hold John neglected A.F., and neglect is a statutory ground for termination, we need not consider the other grounds the magistrate relied upon.

**B. Best Interests of the Child**

Next, we must consider whether there was substantial evidence supporting the magistrate's finding that termination would be in A.F.'s best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best

6

interests, the trial court may consider: the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate considered John's alcoholism, drunk-driving accident, drug trafficking conviction, and substance abuse issues. Moreover, the magistrate noted A.F. is in a stable home with a family member--his uncle--and John believes A.F. "is in a good situation" staying with his uncle. The magistrate also determined John lacked the ability to provide A.F. with professional treatment and help and that A.F. suffered a "tremendous amount of trauma . . . at the hands of his parents." Finally, the magistrate considered John's incarceration and found that his incarceration prevents reunification with A.F. and renders John unable to provide for the health, support, supervision, care, and well-being of A.F. The record supports these findings.

Turning first to incarceration, the record indicates John's next parole hearing date is in September 2019, his parole eligibility date is February 6, 2020, and his sentence satisfaction date is February 5, 2029. As discussed, John has been and will be incarcerated for a substantial part of A.F.'s minority. John simply cannot provide for A.F.'s needs while John is in prison.

Next, A.F.'s counselor testified A.F. suffered from abandonment issues, which caused stress and anxiety. The record demonstrates John lacked the ability to support and help A.F. with these issues--specifically, A.F.'s counselor testified A.F. needed a stable environment to help develop his self-esteem, confidence, and self-identity, and John was unable to provide that kind of stability and permanency.

Additionally, the record supports the magistrate's finding that A.F.'s need for stability and certainty is best achieved through termination of John's parental rights and A.F. remaining with his uncle. Jane testified that her brother--A.F.'s uncle--was "absolutely under the circumstances the best influence for [A.F.] right now." The case manager who placed A.F. in his uncle's home and has since checked in on A.F. testified there were no concerns for A.F.'s safety,

7

A.F. was enjoying school, and A.F. "felt safe and didn't have any concerns for me." Moreover, when John was asked whether he agreed that A.F. was happy and stable with his uncle in California, John testified, "Yeah. Definitely." John agreed that "specifically at this time" it was in A.F.'s best interests to be with his uncle.

Finally, on the issue of substance abuse, a witness who was close to John's mother testified about John's "addiction to alcohol, which was very severe and lifelong." John admitted as much: "I am an alcoholic." John also described his drunk-driving accident, testifying he made "a grave, grave, bad choice getting behind the wheel of a car while [he] was drunk. Just a devastating choice. I hurt three other girls, totalled two cars." In testifying to his criminal history, John explained he was incarcerated in Wisconsin for the possession and sale of cocaine. Based on the record, there was substantial evidence supporting the magistrate's finding that termination would be in A.F.'s best interests. In sum, the magistrate's decision terminating John's parental rights is supported by substantial and competent evidence.

## III.

## CONCLUSION

The magistrate did not err in terminating John's parental rights because John neglected A.F., and termination was in the best interests of A.F. Accordingly, we affirm the magistrate's judgment.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.