**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44838**

| | | |
|---|---|---|
| In the Matter of JOHN DOE, A Child Under Eighteen (18) Years of Age. | ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | 2017 Unpublished Opinion No. 508 |
| | ) | Filed: June 29, 2017 |
| Petitioner-Respondent, | ) ) | |
| | ) | Karel A. Lehrman, Clerk |
| v. | ) ) | |
| | ) | THIS IS AN UNPUBLISHED |
| JANE DOE (2017-11), | ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. A. Lynne Krogh, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Tera Ann Harden, Chief Canyon County Public Defender; Scott J. Davis, Deputy Canyon County Public Defender, Caldwell, for appellant. Scott J. Davis argued; Mikel Hautzinger, appeared.

Hon. Lawrence G. Wasden, Attorney General; Matthew R. Thompson, Deputy Attorney General, Boise, for respondent. Matthew R. Thompson.

_____

GRATTON, Chief Judge

Jane Doe appeals from a judgment terminating her parental rights to her minor son, G.J. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the mother to H.J., born in 2010, and G.J., born in 2014. Early one morning, after having injected bath salts, Doe began hallucinating, became paranoid, and was fearful for her own life and for the lives of her children. She woke her children and left her grandmother's

1

house where they were staying along with G.J.'s father.[1] G.J., who was nine months old at the time, was wearing only a diaper and four-year-old H.J. was wearing a nightgown with no shoes. Doe was also not wearing shoes. Doe started walking down the street, carrying both children. She fell into someone's yard and a woman came out of the house, asking if Doe needed help. Doe, crying hysterically, asked the woman if she would take the children. The woman refused and returned to her home. Doe continued walking, now carrying only G.J., while H.J. followed behind.

A woman driving by saw Doe walking in the middle of the street and stopped to ask Doe if she needed help. Doe did not respond. The woman continued driving but kept watching Doe and the children. Doe and G.J. suddenly disappeared from her view. The driver turned around and got out of her car. She found H.J. standing on a ditch bank crying and Doe and G.J. partially submerged in the ditch. Tall grass partially concealed the shallow ditch which was approximately three feet wide, muddy, and held approximately ten inches of water. The ditch is located roughly a mile from Doe's grandmother's house. The driver observed that Doe was lying on her back in the water. G.J. was on Doe's hip with his head and upper body on his mother's abdomen and the lower part of his body in the water. The driver jumped into the ditch and grabbed G.J. By that time, another driver and his wife had also stopped. The wife took G.J. while the other two attempted to assist Doe, who resisted their help. The police arrived and were able to get Doe out of the ditch while the passersby tended to the children.

A video recording taken with an officer's body camera shows Doe to be conscious but unable to respond coherently to officers' questions. In response to a request to identify herself, Doe stated: "If you want to know who I am, ask [G]od." Sometimes she sat or laid down limply, other times her body was rigid and arched. She intermittently began screaming, apparently whenever someone blocked the sun from her face. Doe was taken away in an ambulance and the children were declared in imminent danger.

That day, H.J. and G.J. were placed in foster care by the Idaho Department of Health and Welfare (the Department), initially with non-relative foster parents. A shelter care hearing was held and the court entered a shelter care order. Thereafter, G.J. and H.J. were placed with their respective paternal grandparents.[2] Subsequently, a case plan hearing was held and the magistrate

---

[1] H.J. and G.J. have different fathers.
[2] H.J. has since reunified with her father and is not subject to this case.

2

reviewed and approved the case plan. Doe was incarcerated at the time the case plan was approved.

Doe was subsequently sentenced on two felony convictions in separate cases: felony injury of a child as a result of the events described above, and felony grand theft for money she stole from her grandparents' bank account. In each case, she was sentenced to a minimum of two years, followed by an indeterminate period of eight years, with the sentences to run concurrently. She was given credit for 230 days served; however, the judgment was later amended to reflect credit for an additional 223 days. The parties stipulated that the earliest date Doe would be eligible for release is August 2017.

The State filed a petition for termination of parental rights on the following grounds: (1) Doe failed to comply with the court's orders in a child protection act case or case plan, and reunification of the child with the parents has not occurred within the time standards set forth in Idaho Code §§ 16-1622(g), 16-2002(3)(b); (2) Doe neglected G.J. as that term is defined in I.C. § 16-2002(3); and (3) Doe has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority. The magistrate granted the State's petition to terminate Doe's parental rights. In the decision, the magistrate entered the following conclusions of law: (1) Doe neglected G.J. by not providing the parental care or control necessary for the child's well-being; (2) Doe neglected G.J. by not completing her case plan; and (3) due to Doe's history of drug use and the uncertainty surrounding her ability to stay sober once she is released from custody, it is in G.J.'s best interest that Doe's parental rights be terminated.[3] Doe timely appeals.

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible,

---

[3] G.J.'s father consented to the termination of his parental rights if Doe's were terminated.

3

family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

4

Doe argues the magistrate's decision to terminate her parental rights should be reversed. Doe asserts first that the magistrate erred because there was no clear and convincing evidence that G.J. was neglected pursuant to I.C. § 16-2002(3)(a). Second, Doe avers that the magistrate erred in finding that compliance with the case plan was not impossible despite Doe's incarceration for the entirety of this action. Third, Doe argues that the magistrate erred in finding that there was substantial and competent evidence to support the conclusion that termination of Doe's parental rights is in the best interest of the child. Finally, Doe argues that the magistrate erred by terminating the parent-child relationship without considering guardianship as an alternative.

A. **Neglect--Inability or Failure to Provide Care**

On appeal, Doe argues the magistrate erred by terminating her parental rights based on the finding that Doe "has not provided the parental care or control necessary for the child's well-being."[4] Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(31), as well as situations where the parent has failed to comply with the court's orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

Doe argues that the magistrate erred in concluding that the incident involving the ditch which led to G.J.'s removal from Doe's care constituted neglect in that her "break with reality . . . seriously endangered her child, and could have resulted in the child's injury or death." Doe avers that this conclusion was not supported by substantial or competent evidence because

---

[4]     Doe relies on this Court's reasoning in *Idaho Dep't of Health & Welfare v. Doe III*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011) to argue that the magistrate placed excessive emphasis upon Doe's behavior prior to the removal of the children from the home. In *Doe III*, this Court reversed the magistrate's decision to terminate a father's parental rights. *Id.* at 765, 250 P.3d at 816. However, in that case, on appeal, the father did not contest neglect but only contested the finding that termination was in the children's best interests. Therefore, that case is not relevant to the issue of neglect here.

5

even though "[Doe] acknowledges that drug use in general is dangerous," her actions also suggest that she was "hyper-focused on protecting her children." Doe asserts that she believed H.J. and G.J. were in danger and she was trying to "protect her children by getting them to safety." Further, that after falling into the ditch she managed to hold on to G.J. and keep his head out of the water, proving that protecting her children was her only concern.

The magistrate concluded that the State demonstrated, with clear and convincing evidence, that Doe had neglected G.J. under I.C. § 16-1602(31)(a), because Doe's "drug use [impacted] her ability to care and provide for her children." The magistrate observed that for the sixteen months prior to the termination hearing, Doe had not provided for any of G.J.'s "basic needs, for food, clothing, shelter, or attachment, all of which are necessary for a child's well-being." The magistrate acknowledged that Doe had been incarcerated throughout that time but discerned that the incarceration was due to Doe's own criminal conduct, noting that "the Idaho Supreme Court has specifically ruled that inability to provide care for a child due to incarceration constitutes neglect."

In addition, the magistrate noted that Doe had been under the Department's supervision even prior to the event involving the ditch. When G.J. was approximately six months old, Doe and G.J.'s father were staying with a friend. The children were residing with them. The Department was alerted as to a possible concern with the friend's child and the police and a Department safety assessor went to the home. Drug paraphernalia, including syringes, was found. Doe testified that the paraphernalia did not belong to her and that she had only used drugs a few times since G.J.'s birth. The safety assessor testified at the termination hearing that both Doe and G.J.'s father showed her track marks on their arms which they said were the result of injections. A voluntary safety plan was put into place. The children were to live with their respective paternal grandmothers. Doe and G.J.'s father went to live with Doe's maternal grandmother. Doe and G.J.'s father had visitation rights, including overnights, to be supervised by Doe's maternal grandmother.[5] Doe was also referred for drug treatment. Doe reported to the case manager that she complied with the treatment for about a week. At the termination hearing, Doe testified that after this incident with the Department she began using drugs heavily. She stated that she was under stress, interacting with a bad crowd, and would take any drug available to her, including methamphetamine, opiates, and bath salts. On appeal, Doe argues that she did

---

5       It was during one of these overnight visits that the event described above occurred.

not sufficiently understand the parameters of the voluntary safety plan put into place at that time. Doe asserts that she was not advised of her rights by an attorney nor was she warned that failure to comply could result in termination of her parental rights.

Even assuming Doe would have behaved differently had she more fully understood the ramifications of not following the voluntary safety plan, this is not a defense to a finding of neglect. Willingness is not necessary to support a finding of neglect and its absence is not a defense to neglect. *Idaho Dep't of Health & Welfare v. Doe*, 158 Idaho 764, 768, 351 P.3d 1222, 1226 (2015). Regardless, evidence of incarceration is competent evidence of neglect. *Id*.; *see also Idaho Dep't of Health & Welfare v. Doe (2011-12)*, 151 Idaho 846, 852, 264 P.3d 953, 959 (2011) (holding that a father's imprisonment alone constitutes neglect under I.C. § 16-1602(25).[6] In *Doe (2011-12)*, the Court recognized that a parent who is incarcerated for a substantial portion of his or her child's life cannot provide any amount of parental control, subsistence, medical or other care, or control necessary for the child's well-being. *Doe*, 151 Idaho at 852, 264 P.3d at 959. Further, an incarcerated parent is unable to discharge his or her responsibilities to and for his or her children, and he or she is leaving his or her children without the parental care necessary for the child's health, safety, or well-being. *Id*. Additionally, the Idaho Supreme Court has recognized that a parent's inability to comply with the law is contrary to providing for the health, morals, and well-being of a child. *Doe*, 158 Idaho at 768, 351 P.3d at 1226. Therefore, the magistrate properly considered Doe's incarceration in finding that Doe neglected G.J.

Additionally, the magistrate made specific findings that support the ruling that Doe failed to provide proper parental care and support. Despite Doe's assertions, her actions on the day that she and G.J. fell into the ditch did not demonstrate "hyper-focus" on her child's safety. Rather, Doe's paranoid fear for her children's safety was a direct result of her decision to inject bath salts on a night when she had been given the opportunity for an overnight visit with her children. Doe knew that the use of bath salts had caused her to hallucinate and/or become paranoid in the past. Doe's drug addiction recklessly endangered her children and, if not for the actions of bystanders, very likely could have resulted in severe injury to or even the death of her children. Further, the magistrate specifically found that "it was [Doe's] drug use, and the impact of her drug use on her ability to care and provide for her children, that resulted in the voluntary safety plan." The

---

[6] This statute section is now renumbered as I.C. § 16-1602(31).

record demonstrates that Doe's drug use continued despite being previously separated from her children as part of the voluntary safety plan. In fact, Doe testified that her drug use escalated after the children were removed from her care, as opposed to giving her motivation to seek treatment for her addiction. Doe has failed to show that the magistrate erred in finding that Doe failed to provide the parental care or control necessary for the child's well-being for purposes of I.C. § 16-1602(31). Therefore, there is substantial and competent evidence to support the magistrate's finding that Doe neglected G.J.[7]

## B. Best Interest of the Child

Doe also argues substantial and competent evidence did not support the magistrate's determination that it was in the best interest of the child to terminate Doe's parental rights. Once the trial court establishes a statutory ground for termination, it must next determine whether it is in the best interest of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interest, the trial court may consider the stability and permanency of the home, the employment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014); *see also Doe v. Roe*, 133 Idaho 805, 809-10, 992 P.2d 1205, 1209-10 (1999); *Doe v. State*, *Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). Thus, a finding that it is in the best interest of the child to terminate parental rights must be made upon objective grounds, supported by substantial and competent evidence. *In re Doe*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012).

The State's petition sought termination based on the likelihood that Doe would remain incarcerated for a substantial period of time during the child's minority. The magistrate correctly stated that the appropriate standard is the time before which Doe could be entrusted with the care of the child without supervision. The magistrate found that although Doe had been sober while incarcerated, there would be "a substantial period of monitoring and supervision" along with

---

[7] Doe also argues that the magistrate erred in finding that Doe neglected G.J. under I.C. § 16-2002(3)(b). Because we have concluded that Doe has failed to show that the magistrate erred in finding that Doe neglected the child pursuant to I.C. § 16-2002(3)(a), we need not address Doe's arguments regarding I.C. § 16-2002(3)(b).

8

drug treatment and testing to demonstrate her continued recovery from drug addiction. Therefore, the magistrate held: "It is not in the child's best interest to wait indefinitely for his mother to start the case plan, and to continue to wait for permanency based on the hope that his mother will successfully complete the case plan."

Doe asserts that she will likely be paroled in August 2017 because she has not had any behavioral issues and has complied with all the terms of incarceration. Further, Doe avers that she has participated in every class offered and maintained contact with her children, although admits that circumstances largely out of her control have made contact with G.J. infrequent. Doe argues that after receiving programming offered at the Pocatello Women's Correctional Center, she will gain valuable skills that will aid in her drug addiction recovery and that she has the work experience and education to be successful.

In *Doe v. Roe*, the Idaho Supreme Court upheld the trial court's termination of Roe's parenting rights because Roe's plans for the future were uncertain. *Roe*, 133 Idaho at 810, 992 P.2d at 1210. In that case, Roe had not taken any definite steps to obtain steady employment or provide for an otherwise stable environment. *Id.* The Court affirmed the trial court's determination that such uncertainty was not in the child's best interest because "it is not in the best interests of [the minor] child to have to wait while possibly other types of legal proceedings develop regarding visitation, custody, support, etc. The child deserves stability and certainty in her life, none of which her mother can provide." *Id.* Likewise, here, Doe has failed to demonstrate that she will be able to provide stability for her child now or in the future. The primary case manager testified at the termination hearing that she believes Doe has done all of the programming available to her while incarcerated. In her Investigation Report for Termination of Parental Rights, the case manager noted that she observed Doe "to be loving, caring, and empathetic during visits with her children." Regardless, the case manager also testified at the termination hearing that she believes it to be in the child's best interests to terminate Doe's parental rights. She stated that she has seen G.J. at least once a month while this case has been open and that in foster care, G.J. currently has "a stable home environment where he can be secure and flourish and develop." The case manager noted that G.J. has his own room, a swing set in the backyard, and that the home is appropriate for a small child. Further, she testified that G.J. appears to be a very happy child who is meeting all of his developmental milestones.

The earliest date Doe could possibly be released is August 2017, at which time G.J. will be nearly three years old. Doe would not be eligible to care for G.J. until she could demonstrate that she is able to provide a safe, structured, and stable home environment sufficient to care for a young child. Given Doe's drug abuse history, criminal record, and previous dealings with the Department, we agree it is possible that considerable additional time would pass before Doe is able to regain custody of G.J. and sufficiently care for him. Doe has failed to show that the magistrate erred in finding that it was not in the child's best interest to delay permanency and to disrupt the child's current environment and development based on a hope for Doe's potential success outside of custody.

## C.     Guardianship as an Alternative

Doe argues that the district court should have considered guardianship as an alternative to terminating Doe's parental rights. Doe's maternal grandmother had filed a petition for guardianship; however, the State indicated such a petition was contrary to its goal of termination and adoption. Doe does not cite to any legal authority in support of her argument. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). In this case, Doe has not cited authority for her argument nor has she specifically identified why the district court should have considered guardianship when addressing the petition for termination. The issue is thus waived.

## III.

## CONCLUSION

There was substantial and competent evidence Doe neglected G.J. and that termination of Doe's parental rights was in the best interest of the child. For the reasons set forth above, we affirm the magistrate's order terminating Doe's parental rights.

Judge MELANSON and Judge HUSKEY **CONCUR**.